PIEPER ELECTRIC, INC., Plaintiff-Respondent,

V.

LABOR & INDUSTRY REVIEW COMMISSION, Defendant-Appellant,

George G. VERGETIS, Defendant.†

Court of Appeals

No. 83–1063. Submitted on briefs January 19, 1984.—
Decided February 20, 1984.
(Also reported in 346 N.W.2d 464.)

† Petition to review denied.

For the defendant-appellant Labor and Industry Review Commission the cause was submitted on the briefs of *Robertamarie Kiley,* of Madison.

For the plaintiff-respondent the cause was submitted on the briefs of *Michael, Best & Friedrich,* with *Thomas W. Scrivner* and *Thomas P. Godar* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Decker and Moser, JJ.

MOSER, J.   The Labor and Industry Review Commission (LIRC) appeals from a judgment of the circuit court reversing the LIRC's finding that Pieper Electric, Inc. (Pieper), failed to establish that George G. Vergetis (Vergetis) was discharged from Pieper's employ for

misconduct. The circuit court remanded the case to the LIRC for consideration of improperly discredited testimony, in light of the claimant's entire attendance record, and for adequate explanation of the LIRC's findings of fact.

On appeal, the LIRC claims that the circuit court's reversal and remand was erroneous on evidentiary grounds, on the ground that the court improperly required the LIRC to explain its factual findings, and on the ground that the LIRC's findings and conclusions were reasonable. We disagree with the charges of error and affirm the circuit court.

Vergetis was employed by Pieper as a journeyman electrician from June 27, 1978, to March 12, 1980. Vergetis was dispatched by Pieper to various customer locations to carry out his job assignments. He drove a company truck and was not directly supervised.

During the course of his employment Vergetis received numerous verbal warnings concerning his unacceptable attendance record. In addition, Vergetis received three written warnings. The first of these, dated January 16, 1980, was issued by the president of Pieper. The warning noted that Vergetis had been lax in reporting his work locations during the day and had been guilty of not reporting to the office in the morning until after 9 a.m., or not reporting at all. The memo instructed Vergetis that he was to call the office if he was not going to be in or was going to be late and further that, once on the job, he was to report his work location at all times. A second warning, also from the company president, was issued a month later in response to Vergetis' failure to give notice of an absence. This second warning explicitly stated that Vergetis' conduct was subject to disciplinary action or termination. On September 7, 1979, a third written warning was issued in response to Vergetis' failure to inform the office that he was leaving a customer

job after working only one and one-half hours of an eight-hour shift.

Despite the warnings, Vergetis continued to be absent without excuse. In the final two months of his employment in 1980, Vergetis was absent on February 7, 19 and 29 and on March 3, 4, 5, 6, 7, 10 and 11. Vergetis claimed he was ill the week of March 3–7 but only called in to give notice of his absences on March 3 and 4 and offered no doctor's corroboration of his illness.

Regarding the absences of March 10 and 11, Vergetis said he was absent without notice because he received a telephone call from an unidentified person on Sunday night, March 9, allegedly advising him that he was terminated from employment. Vergetis could not identify the caller and made no effort to confer with management personnel to find out who the caller was or to verify his employment status.

On the evening of March 11, 1980, the company dispatcher called Vergetis to tell him that he was scheduled to meet with the company president at 8 a.m. the next morning. When Vergetis reported in, he was dispatched to finish a job he had started previously. When he returned, he met with the company president and was told he was being discharged for cause.

Vergetis' application for unemployment benefits was denied in an Initial Determination issued by Job Service on April 8, 1980. Upon Vergetis' appeal, a hearing was held. The appeal tribunal, by its hearing examiner, determined that Vergetis had been discharged for misconduct and was, thus, ineligible for benefits under sec. 108.04(5), Stats.[1] On review by the LIRC, the decision was reversed. Pieper filed for review of the LIRC decision in the circuit court for Milwaukee county. In an

---

[1] Sec. 108.04(5), Stats., provides that an employe's eligibility for unemployment compensation benefits shall be barred after he has been discharged for misconduct connected with his employment.

order of judgment dated April 12, 1983, the court reversed and remanded the LIRC decision for further consideration not inconsistent with its memorandum decision of March 30, 1983. The LIRC appealed from this order.

The LIRC's first argument is that the circuit court erred when it ruled that the LIRC should have taken into account the testimony of Carolyn Shick (Shick), Pieper's personnel manager. According to the LIRC, Shick's testimony was inadmissible for lack of personal knowledge of the facts she testified to regarding Vergetis' absences. Shick had no personal knowledge of the facts because she had only been employed by Pieper two days before Vergetis was discharged. Her testimony was based solely on documents in the company's personnel file.

We hold that the circuit court properly ruled that the LIRC erred in ignoring Shick's testimony. We note first that the personnel records which Shick referred to in testifying would have been admissible in a court of law under the exception to the hearsay rule for records of regularly conducted activity.[2] The LIRC claims, however, that, since the records were not offered or received into evidence, testimony based upon those records was not admissible.

The LIRC's technical argument in favor of rigid adherence to evidentiary rules is completely contrary to established rules of administrative agency procedure. A regulation of the Department of Industry, Labor and Human Relations provides that "[s]tatutory and common law rules of evidence and other technical rules of procedure are not controlling with respect to hearings."[3] Under the regulation all testimony having reasonable

---

[2] Sec. 908.03(6), Stats.

[3] Wis. Adm. Code, Ch. Ind-UC, § 140.05(4).

probative value is admissible.[4] The legislature adopted this relaxed approach to evidentiary rules in administrative proceedings in sec. 227.08(1), Stats., which provides that "[except in ethics code violation hearings concerning public officials] an agency or hearing examiner shall not be bound by common law or statutory rules of evidence." Again, the only criterion for admissibility under this statute is reasonable probative value.[5] The LIRC does not argue that Shick's testimony was not relevant. Because technical evidentiary rules did not bar the admission of Shick's testimony, the LIRC improperly discredited it. The circuit court correctly reversed the LIRC and instructed it on remand to credit and consider Shick's testimony.

The second ground which the LIRC advances for reversal of the circuit court is that the court erroneously held that the LIRC was required to explain why it made findings of fact different from those made by the appeal tribunal. Because Wisconsin law requires the LIRC to explain why it differs with the appeal tribunal on matters resting on an assessment of the credibility of a witness, and because a credibility resolution entered into the LIRC's decision in this case, we hold that the circuit court correctly reversed and remanded the case for explanation by the LIRC.

Where the credibility of a witness is at issue and a commission reverses its examiner and makes contrary findings, due process requires that the commission (1) glean, from the record or from personal consultation with the examiner, the examiner's personal impressions of the material witness[es] and (2) include in a memorandum opinion an explanation for its disagreement with

---

[4] *Id.*

[5] Sec. 227.08(1), Stats.

the examiner.[6] The LIRC claims in this case that it did not overturn the examiner on issues concerning credibility and thus was not required to explain its disagreement with the examiner. It is obvious to this court, as it was to the circuit court, that credibility was very much at issue here.

The hearing examiner denied unemployment benefits to Vergetis on the basis of his "admissions against interest." Vergetis admitted his unexcused absences. Obviously, the examiner rejected as invalid any excuses Vergetis offered for those absences.

On review, the LIRC focused on Vergetis' March, 1980, absences and found them justifiable. The LIRC held that the March 3–7 absence was for a valid reason, illness, and that it was reported to Vergetis' employer. With respect to the March 10–11 absence, the LIRC made a finding of fact that Vergetis was discharged from employment over the telephone on Sunday, March 9. The LIRC's belief in Vergetis' account of his discharge by telephone and the hearing examiner's contrasting rejection of that account present a clear-cut issue as to witness credibility. By reversing the examiner, the LIRC was saying that Vergetis was truthful in his explanations for his March 3–7 and March 10–11 absences. As the LIRC's assessment of Vergetis' credibility was in stark opposition to that of the hearing examiner, the LIRC was required to explain its differing factual findings. We uphold the circuit court's reversal and remand based on the LIRC's failure to explain itself in this regard. We also uphold the circuit court's instruction to the LIRC to address Vergetis' total employment record instead of just his March absences.

[6] *See Carley Ford, Lincoln, Mercury, Inc. v. Bosquette,* 72 Wis. 2d 569, 575, 241 N.W.2d 596, 599 (1976); *Braun v. Industrial Comm'n,* 36 Wis. 2d 48, 56–57, 153 N.W.2d 81, 84–85 (1967).

The LIRC's final contention is that its determination that Pieper did not introduce sufficient credible evidence for a finding of misconduct on the part of Vergetis was a reasonable decision and, thus, was not subject to reversal. In light of our agreement with the circuit court that reversal is required because the LIRC improperly discredited probative testimony and failed to explain why it differed with the appeal tribunal on an issue of witness credibility, we do not reach the question whether a reasonable person, based upon the credible evidence, would have reached the LIRC's conclusion.

*By the Court.*—Judgment affirmed.