Patricia A. CHARETTE, Plaintiff-Respondent,

v.

State of Wisconsin, LABOR AND INDUSTRY REVIEW COM-
MISSION, Defendant-Appellant,

BENEVOLENT CORP. CEDAR CAMPUSES, Defendant.

Court of Appeals

*No. 94–3238. Submitted on briefs August 22, 1995.—Decided
September 20, 1995.*

(Also reported in 540 N.W.2d 239.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William W. Cassel* of the Labor and Industry Review Commission.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Raymond M. Clark* of Milwaukee.

Before Anderson, P.J., Brown and Nettesheim, JJ.

ANDERSON, P.J. The Labor and Industry Review Commission (LIRC) appeals from a judgment of the trial court wherein the court reversed LIRC's decision denying Patricia A. Charette unemployment compensation benefits. Because we conclude that Cha-

958

rette's excessive tardiness constituted misconduct, we reverse the decision of the trial court.

Charette was employed from September 1990 until October 1992 by Benevolent Corp. Cedar Campuses as a receptionist. She was discharged in October 1992 for excessive absenteeism. There was testimony at the unemployment compensation hearing that Charette's tardiness was recurrent and disrupted other employees' work schedules.

An administrative law judge (ALJ) denied Charette unemployment compensation on the basis that she was discharged from employment for misconduct. LIRC affirmed the ALJ. The circuit court reversed LIRC's decision, stating that the findings of fact did not show that the discharge was for misconduct. LIRC appeals.

■

We must determine whether Charette's tardiness constituted "misconduct" for purposes of unemployment compensation. This determination is a question of law which we review de novo. *McGraw-Edison Co. v. DILHR*, 64 Wis. 2d 703, 713, 221 N.W.2d 677, 683 (1974). Because this is a question of law, a determination by the ALJ or LIRC is not binding on this court. *Id.*

■

Even though their determinations are not *binding*, however, this does not dictate that we may not pay *deference* to LIRC in cases where employee misconduct is asserted as a defense to a claim for unemployment compensation. Indeed, although judicial review of an administrative agency's decision presents a question of law, Wisconsin courts may assign "great weight" to the agency's determination, depending on the subject matter. *Sauk County v. WERC*, 165 Wis. 2d 406, 413, 477 N.W.2d 267, 270 (1991). We note that no appellate

court in this state has heretofore determined if "great weight" should be assigned to LIRC's conclusions about whether misconduct has occurred. LIRC now argues that we should accord "great weight" to its decisions and therefore the issue is before us to resolve.

We will assign "great weight" to an agency's decision if the administrative agency's experience, technical competence and specialized knowledge aid the agency in its interpretation and application of the law. *Id.* It should also be applied where "a legal question is intertwined with factual determinations or with value or policy determinations . . . ." *Id.* Moreover, we note that this standard is the general rule in Wisconsin. *Id.* We conclude that the question of whether tardiness constitutes misconduct is intertwined with factual and value determinations, as exemplified in this case, and we should therefore assign "great weight" to LIRC's decision.

Chapter 108, STATS., provides the scheme for unemployment compensation in Wisconsin. An employee discharged for "misconduct" is denied unemployment compensation benefits as follows:

> (5) DISCHARGE FOR MISCONDUCT. An employe whose work is terminated by an employing unit for misconduct connected with the employe's work is ineligible to receive benefits until 7 weeks have elapsed since the end of the week in which the discharge occurs and the employe earns wages after the week in which the discharge occurs equal to at least 14 times the employe's weekly benefit rate under s. 108.05(1) in employment or other work covered by the unemployment compensation law of any state or the federal government.

960

Section 108.04(5), STATS. It has been frequently noted that Ch. 108 does not define the term "misconduct."

In *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636 (1941), the court defined the term "misconduct" for unemployment compensation purposes as:

> conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

*Id.* at 259-60, 296 N.W. at 640. The court went on to state that "mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute."[1] *Id.* at 260, 296 N.W. at 640.

Charette argues that her conduct, when viewed in conjunction with her total record, does not rise to the level of misconduct connected with her employment. She asserts that there is nothing in the record to justify the finding of the ALJ or LIRC that her conduct rose to the level of misconduct.

---

[1] In the subsequent case of *McGraw-Edison Co. v. DILHR*, 64 Wis. 2d 703, 712, 221 N.W.2d 677, 682 (1974), the court held that a reasonable interpretation of the term "misconduct" includes "a recurrent pattern of negligent acts, so serious as to amount to gross negligence and thereby evince an intentional and substantial disregard of the employer's interests . . .."

We disagree. Charette exhibited a reoccurring pattern of tardiness. At the hearing, Dorothy Martin, administrative secretary and Charette's supervisor, testified that Charette's tardiness was "almost constant" and that when Charette was late, another employee who had been performing the job had to wait until Charette arrived and got organized. This had the effect of making the employee who Charette replaced late for his or her next duty. Martin also testified that she discussed Charette's tardiness with her during the course of her employment.

Additionally, Lisa Meyer, personnel office manager at Benevolent Corp., testified as follows:

Q. Okay. And do you know what the effect of her coming in late would been [sic] upon her place of employment?

A. Well, she would have to relieve whoever was there since six in the morning, so that person would be way late, by her being tardy, and not being able to report to their own work station.

Meyer testified that she gave Charette an oral warning in October 1991.

We conclude that Charette's excessive tardiness which disrupted the office work schedule, as testified to by Martin and Meyer, rose to the level of misconduct. Additionally, we conclude that Charette's termination was based on her entire employment record with Benevolent Corp. *See Pieper Elec., Inc. v. LIRC*, 118 Wis. 2d 92, 98, 346 N.W.2d 464, 467-68 (Ct. App. 1984). Charette was warned orally and in evaluations concerning her excessive tardiness.[2] Her behavior

---

[2] Charette states in her brief: "Employee's health condition was known to employer from the beginning; and its existence

evidenced an intentional and substantial disregard of the employer's interests and of her duties as an employee. We therefore reverse the decision of the trial court.

*By the Court.*—Judgment reversed.

and being a problem was never hidden by employee." Charette is a diabetic and testified at the hearing that she "would take blood sugar when [she] left the house, take [her] insulin . . . and [she] would again take [her] blood sugar in the car before [she] came in." We agree with LIRC that while we are sympathetic to Charette's health concerns, there was no credible evidence that her illness resulted in a valid excuse for her tardiness.