_____

No. 95-1597
_____

House of Lloyd, Inc.,          *
                               *
             Appellee,         *
                               *
     v.                        *
                               *
Versa Corporation, doing       * Appeal from the United States
business as Versa, Ferguson    * District Court for the
Conveyor Corporation,          * Western District of Missouri
                               *
             Defendant.        *
                               *
Federal Insurance Company,     *
                               *
             Appellant.        *


_____

        Submitted:  November 15, 1995

           Filed:  June 25, 1996
_____

Before McMILLIAN, FLOYD R. GIBSON, and LOKEN, Circuit Judges.
_____


McMILLIAN, Circuit Judge.


     Federal Insurance Company (Federal) appeals from a final
judgment entered in the United States District Court for the
Western District of Missouri in favor of House of Lloyd, Inc.
(Lloyd), on Lloyd's claim for insurance proceeds to cover the
replacement cost of certain equipment that was destroyed by a fire
on Lloyd's property while being installed by Federal's insured,
Versa Corporation (Versa).  House of Lloyd, Inc. v. Versa Corp.,
No. 89-0943-CV-W-6 (W.D. Mo. Jan. 26, 1995).  For reversal, Federal
argues that the district court erred in holding that (1) the loss

of property was covered by the policy Federal issued to Versa (the Federal policy) even though the risk of loss had passed from Versa

to Lloyd, id. (June 7, 1993) (magistrate judge's order disposing of risk of loss issue), and (2) Federal's share of the insurance liability was 83%, as compared to 17% attributed to Lloyd's insurer, Travelers Indemnity Company (Travelers). Id. (Sept. 26, 1994) (district court order disposing of coverage issue); id. (Jan. 26, 1995) (district court order disposing of monetary allocation issue). For the reasons discussed below, we hold that the Federal policy did not cover the loss of property at issue in the present case. Accordingly, we reverse the judgment of the district court in favor of Lloyd against Federal, decline to reach the allocation issue as moot, and remand this case to the district court with instructions to enter judgment for Federal.

**Background**

The background facts are stated in detail in the magistrate judge's order dated June 7, 1993. Id., slip op. at 1-12 (June 7, 1993). The following is a brief summary of the facts. On April 28, 1987, Lloyd entered into a contract with Versa whereby Versa agreed to supply and install conveyor subsystems at Lloyd's distribution facility under construction, located on Botts Road in Grandview, Missouri. On November 27, 1987, after the conveyor subsystems had been delivered, but before installation was complete, they were damaged or destroyed in a fire at the Lloyd distribution facility. The Federal policy insuring Versa was in effect at the time of the fire. The Federal policy contained an "Installation Floater," which included the following provision:

  1.  PROPERTY COVERED:

      This policy insures the property of the
      Insured and the property of others for which
      the Insured may be liable, consisting

-3-

principally of mechanical material[,] handling equipment and metal products.

Joint Appendix, Vol. II, at 600 (attachment to parties' joint stipulation of facts).  Lloyd also had an insurance policy issued by Travelers (the Travelers policy), which was in effect at the time of the fire and undisputedly covered Lloyd's loss.[1]

Lloyd brought the present action in federal district court on the basis of diversity jurisdiction, asserting two breach of contract claims against Versa (Counts I and II) and a contract claim against Federal (Count III).  As to Versa's liability, Counts I and II of the complaint alleged that Versa bore the risk of loss of the conveyor subsystems at the time of the fire.  As to Federal's liability, Count III alleged that, under the terms of the Installation Floater in the Federal policy, the conveyor subsystems were "property of others for which [Versa] may be liable."

In the course of the litigation, the parties stipulated to a separation of issues for trial purposes.  The parties agreed to first have the risk of loss issue tried by the court; afterward, depending on the outcome in that bench trial, a jury trial would be held on the remaining liability issues.  House of Lloyd, Inc. v. Versa Corp., slip op. at 2 (Apr. 16, 1992) (order incorporating parties' stipulation).  By consent of the parties, the first trial was conducted by a magistrate judge.  The magistrate judge held that Versa was not liable to Lloyd because the risk of loss of the conveyor subsystems passed to Lloyd upon delivery.  Id., slip op. at 12-28 (June 7, 1993).[2]

---

[1]Lloyd asserts, however, that there was dual coverage under the Federal policy and the Travelers policy.

[2]In an order dated July 19, 1993, the magistrate judge held that the June 7, 1993, ruling was interlocutory and not a final and appealable judgment or order.  House of Lloyd, Inc. v. Versa Corp., No. 89-0943-CV-W-6 (W.D. Mo. July 19, 1993).  Later, after the district court entered judgment in favor of Lloyd on the issue of

Following the magistrate judge's June 7, 1993, ruling on the risk-of-loss issue, the district court required the parties to file stipulated facts and ordered briefing on the issue of Federal's liability.[3]  The district court then disposed of the issue of Federal's liability without a jury trial or a bench trial.  Id. (Sept. 26, 1994) (memorandum and order).[4]  In its order dated September 26, 1994, the district court held that the Federal policy covered Lloyd's loss because coverage under the Installation Floater was triggered by Versa's equitable responsibility for the conveyor subsystems, notwithstanding the fact that the risk of loss had passed from Versa to Lloyd.  Id. at 3.  The district court then invited briefing regarding the amount of money owed by Federal.

Federal's liability, the magistrate judge ordered entry of final judgment in favor of Versa in accordance with the June 7, 1993, order.  Id. (Mar. 17, 1995).  Lloyd has not cross-appealed with respect to the risk-of-loss issue.  Accordingly, the final determination that the risk of loss passed from Versa to Lloyd upon delivery of the conveyor subsystems is not reviewable in the present appeal and must be accorded appropriate deference as the law of the case.

[3]These procedural steps were taken by the district court despite the court's earlier ruling that, if Lloyd were found in the initial bench trial to have borne the risk of loss vis-a-vis Versa, then a jury trial would be held on Lloyd's remaining claim against Federal.  Id., slip op. at 2 (Apr. 16, 1992).

[4]It is unclear from the materials provided on appeal how the district court procedurally reached the issue of Federal's liability in the manner it did.  As noted above, the district court's order of April 16, 1992, stated that the issue of Federal's liability would be tried by a jury if Lloyd were found to have borne the risk of loss.  Id.  No jury trial or bench trial was held, however, and instead the district court ruled on the merits, apparently relying solely on the facts stipulated by the parties and the magistrate judge's findings.  Id. (Sept. 26, 1994) (memorandum and order).  Federal asserts in its brief on appeal that this is an "appeal from a civil bench trial."  Brief for Appellee at 6.  Lloyd, by contrast, asserts that "the District Court's judgments . . . were in the nature of summary judgment."  Supplement to Brief of Appellant (filed May 16, 1995).

Following that briefing, the district court found that Federal was liable for $1,045,884.05 of the total loss, and Travelers was liable for the remaining $214,217.21.  <u>Id.</u> at 7 (Jan. 26, 1995) (allocating liability according to a ratio of relative liability

derived by comparing applicable limits in two policies). Judgment
was entered. Id. (Jan. 26, 1995); id. (Mar. 17, 1995). Federal
appealed.

## Discussion

We first consider our standard of appellate review. As noted
above (see note 3 supra), neither the district court's orders nor
any other documentation in the record on appeal reveals the
specific procedural mechanism employed by the district court in
deciding the issue of Federal's liability. However, whether we
treat the district court's decision as a summary judgment
disposition or the equivalent of a bench-tried matter, the standard
of review is essentially the same. Assuming as true the facts to
which the parties have stipulated, and the magistrate judge's
uncontested finding that the risk of loss had passed from Versa to
Lloyd upon delivery of the conveyor subsystems, we determine de
novo whether, as a legal matter of contract interpretation, the
Federal policy covered Lloyd's loss. For the reasons stated below,
we hold that it did not.

The disposition of this case turns on the legal effect of the
following words in the Installation Floater of the Federal policy:
"this policy insures . . . the property of others for which the
Insured may be liable, consisting principally of mechanical
material[,] handling equipment and metal products." In arriving at
the legal conclusion that these words required Federal's coverage
for Lloyd's loss of the conveyor subsystems, the district court
relied on Folger Coffee Co. v. Great Am. Ins. Co., 333 F. Supp.
1272 (W.D. Mo. 1971) (Folger Coffee) (where bailee's insurance
policy provided "the policy covers . . . property of others held by
the insured for which the insured is liable," personal property of

bailor damaged while in bailee's possession was covered under bailee's insurance policy regardless of whether the damage resulted from bailee's negligence or other wrongdoing). The district court

held that the coverage provided under the Installation Floater for property of others for which Versa "may be liable" was not limited to losses for which Versa would be legally liable, but rather more broadly referred to losses of or damage to property of others for which the insured was legally or equitably responsible. <u>House of Lloyd, Inc. v. Versa Corp.</u>, slip op. at 2-3 (Sept. 26, 1994) (citing <u>Folger Coffee</u>, 333 F. Supp. at 1274-75 ("it is concluded that Missouri courts would follow the prevailing view and construe the word `liable' in the policy in the case at bar to be synonymous with `responsible'")).

The district court then reasoned:

> If it seems adequately established, as in <u>Folger Coffee</u>, that "liable" should include the practical responsibilities of a bailee, regardless of legal liability, it will be acknowledged that the present case requires going a step or two beyond bailment situations. Unlike a bailment, there was here shared possession of the subsystem components, not exclusive possession in Versa, the party which had contract obligations but no longer owned the property. However, the duty to install was a continuing responsibility of Versa's, and in that sense it remained at least "equitably" responsible for the property that it was to install and for which it would presumably have actual priority in handling, despite technically shared possession. Moreover, the specified duration of coverage definitely included the installation period, which strongly indicates that the period during which Versa would be "liable" was contemplated as extending through installation and until acceptance.

<u>Id.</u> at 3.

In the present appeal, Federal argues that the district court's liability determination contradicts the plain meaning of

-10-

the Installation Floater.  Federal maintains that the language of the Installation Floater plainly indicates that Federal only provided coverage for damages that Versa was obligated to pay. Because the risk of loss passed to Lloyd upon delivery, Federal

argues, Versa was not obligated to pay damages; thus, there is no coverage under the Federal policy. Federal further argues that the district court erred in interpreting <u>Folger Coffee</u>. Unlike the bailee-insured in <u>Folger Coffee</u>, Versa, the insured in the present case, did not bear the risk of loss at the relevant time. The mere fact that Versa was responsible for installing the conveyor subsystems at the time of the fire, Federal argues, does not legally or equitably create responsibility to protect against the loss of or damage to that property, particularly where the property was not within Versa's exclusive custody and control.

Lloyd, by contrast, maintains that Federal's proposed interpretation of the Installation Floater suffers from the mistaken assumption that Federal provided coverage for liability when, in fact, Federal provided coverage for the loss of or damage to property. That covered property, Lloyd argues, included property of others for which Versa was responsible, including the conveyor subsystems. In support of this argument, Lloyd highlights the fact that the Installation Floater contains numerous references to the insured "property." Lloyd also relies on language in the Underwriting Guidelines for the Installation Floater[5] and a letter

---

[5]The Underwriting Guidelines provided in pertinent part:

> The interest of the owner, seller or contractor is covered against loss or damage to machinery, equipment, building materials or supplies being used with and during the course of installation, testing, building, renovating or repairing. Such policies provide coverage at points or places where work is being performed, while in transit, and during temporary storage or deposit.

Joint Appendix, Vol. II, at 614. Elsewhere the Underwriting Guidelines state:

1.   <u>Property Covered</u>

from Federal to Versa's attorney in which Federal disclaimed a duty to defend Versa against Lloyd's claims on grounds that the Installation Form was "not a liability form."[6]  Responding to Federal's contention that the district court erred in its application of <u>Folger Coffee</u>, Lloyd disputes the notion, advanced by Federal, that <u>Folger Coffee</u> implicitly recognizes a distinction between bailment cases and non-bailment cases.  Lloyd defends the district court's reasoning on grounds that <u>Folger Coffee</u> rests on a more fundamental distinction between coverage for liability and coverage for property.  Finally, Lloyd argues that the district court's interpretation of the Installation Floater is consistent with Missouri state court cases which have recognized that insurance contract language referring to "property of others" for which the insured may be liable expresses an intent by the insurer to benefit parties other than the named insured and to pay them directly.  Brief for Appellee at 18-23 (citing <u>Peters v. Employers Mut. Casualty Co.</u>, 853 S.W.2d 300 (Mo. 1993) (en banc) (<u>Peters</u>) (policy provided coverage to college faculty members, not named in

<hr>

> Our Builders Risk/Installation floater covers physical loss or damage to property during installation.  It does not cover nor is <u>it intended to cover</u> the General Liability of

the <u>Insured</u>.  Every contractor and sub-contractor should be expected to have a General Liability policy to protect this exposure.

Joint Appendix, Vol. II, at 616 (emphasis in text).

[6]When this lawsuit was initially brought by Lloyd, Versa contacted Federal and demanded that Federal provide Versa with a defense; Federal responded by letter stating that the Installation Form was "not a liability form, and therefore there is no duty to defend the insured against actions such as those alleged in the complaint, for breach of contract." <u>See</u> Joint Appendix, Vol. III, at 738 (letter).

the policy, whose personal property was destroyed in a fire in the insured college's theater); <u>Mitchell v. K.C. Stadium Concessions, Inc.</u>, 865 S.W.2d 779 (Mo. Ct. App. 1993) (<u>Mitchell</u>) (policy of lessee provided coverage to lessor, for damage to lessor's personal

property resulting from a fire on the leased property); <u>Boatmen's First Nat'l Bank v. Hawkeye-Security Ins. Co.</u>, 861 S.W.2d 600 (Mo. Ct. App. 1993) (<u>Boatmen's v. Hawkeye-Security</u>) (where insured sought coverage for personal property stolen from a warehouse and the actual title owner of the stolen property was not a named insured but was a corporation jointly owned by the insured and his wife, judgment for insurance company was reversed on grounds that ambiguities existed precluding determination of coverage issue at summary judgment stage)).

We agree with Lloyd that the Installation Floater at issue in the present case expresses an intent to benefit directly parties not named in the policy, where appropriate. However, upon careful <u>de novo</u> review, we hold that the district court erred in concluding that the Federal policy covered Lloyd's loss in the present case. Specifically, the district court's interpretation of the Installation Floater is inconsistent with that provision's ordinary and plain meaning. As the Missouri Court of Appeals explained in <u>Boatmen's v. Hawkeye-Security</u>, 861 S.W.2d at 602,

> [t]he rules of construction applicable to insurance contracts require that the language used be given its plain meaning. <u>Robin v. Blue Cross Hosp. Serv., Inc.</u>, 637 S.W.2d 695, 698 (Mo. banc 1982) (citations omitted). If the policy is unambiguous, it must be enforced according to its terms. <u>Id.</u> If the language is ambiguous, it will be construed against the insurer. <u>Id.</u> Language is ambiguous if it is reasonably open to different constructions; and language used will be viewed in light of the meaning that would ordinarily be understood by the layman who bought and paid for the policy. <u>Id.</u>

Applying the above-stated principles to the undisputed facts of the present case, we hold that Lloyd's loss was not covered by the Federal policy by virtue of the Installation Floater. We hold

that the relevant language of the Installation Floater ("this policy insures . . . the property of others for which the Insured

may be liable") is clear and unambiguous: Federal must indemnify Versa for its liability arising out of the loss of or damage to property of others during installation. Furthermore, notwithstanding Federal's stated assertion that it did not have a duty to defend Versa, we read the words "may be" in the Installation Floater as signifying Federal's duty to defend Versa against claims arising out of the loss of or damage to property of others during Versa's installation. We interpret the words "may be" for the purpose of eliminating the possibility that those specific words indicate that Federal must cover Lloyd's losses regardless of Versa's obligation to pay. Federal's duty to defend Versa is not otherwise at issue in the present appeal.

Moreover, the meaning that would ordinarily be understood by the party which bought and paid for the policy (i.e., Versa) is that the Installation Floater operates as an indemnity provision. The letter from Federal to Versa upon which Lloyd relies demonstrates, not only that Federal refused to provide a defense for Versa, but also that Versa understood the Installation Floater to be an indemnity provision. Significantly, Versa, not Lloyd, is the party which "bought and paid for the insurance." Boatmen's v. Hawkeye-Security, 861 S.W.2d at 602. Accordingly, we hold as a matter of law that, under the facts of the present case, the Installation Floater imposed upon Federal no more than a duty to defend Versa and to indemnify Versa for its legal obligations to pay for the loss of or damage to property of others during Versa's installation.

Finally, our interpretation of the Installation Floater is consistent with Folger Coffee. Unlike Versa in the present case, the insured in Folger Coffee retained the risk of loss at all relevant times because of the parties' bailment relationship. In a bailment situation, the bailor can recover for loss of or damage

to the bailment property upon proof that the loss or damage occurred while in the bailee's possession because an inference of

negligence is raised under the res ipsa loquitur doctrine. <u>Royster v. Pittman</u>, 691 S.W.2d 305, 308 (Mo. Ct. App. 1985). Versa was not a bailee in the present case. The mere fact that Versa had a contractual obligation to install the conveyor subsystems was not the same, for liability purposes, as a bailee's responsibility to protect against damage or loss, particularly in light of the fact that the conveyor subsystems were not even within Versa's exclusive custody and control but were located on Lloyd's property at the time of the fire. <u>Cf.</u> <u>Peters</u>, 853 S.W.2d at 302-03 (where building-owner's policy provided coverage for "contents" of building, loss of personal property of plaintiffs who were not named insureds was covered "property of others" because it was destroyed while contained within the insured's building). Moreover, Lloyd is bound by the district court's determination that the risk of loss had passed to Lloyd at the time of the fire. We therefore hold that Versa was not legally or equitably "responsible" for the conveyor subsystems within the meaning of <u>Folger Coffee</u>.

Accordingly, we reverse the judgment of the district court in favor of Lloyd against Federal, decline to reach the allocation issue as moot, and remand this case to the district court with instructions to enter judgment for Federal.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.