Jesus Lopez, Plaintiff-Appellant,

v.

Labor and Industry Review Commission, and Willow Foods, Inc., Defendants-Respondents.

Court of Appeals

*No. 01–0165. Submitted on briefs December 7, 2001.—Decided February 21, 2002.*

2002 WI App 63

(Also reported in 642 N.W.2d 561.)

476

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Kevin G. Magee* of *Legal Action of Wisconsin, Inc.*, Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *William W. Cassel* of *Labor and Industry Review Commission*.

Before Vergeront, P.J., Dykman and Lundsten, JJ.

¶ 1. VERGERONT, P.J. Jesus Lopez appeals the circuit court's order affirming a decision of the Labor and Industry Review Commission. LIRC determined that Lopez's physical assault of another co-worker constituted "misconduct" and denied Lopez unemployment insurance benefits. Lopez contends that the physical assault was not misconduct because there was sufficient provocation after Lopez had endured months of the co-worker's harassing comments about Lopez's national origin and Lopez's employer had failed to stop the harassing behavior despite Lopez's complaints. We conclude that LIRC's decision was reasonable and therefore affirm the circuit court's order.

## BACKGROUND

¶ 2. Lopez worked for approximately one and one-half years as a sanitation worker at Willow Foods. Willow Foods discharged Lopez after a fight with a co-worker, Jim Jaeger. An initial determination by a deputy commissioner for the Unemployment Insurance Division of the Department of Workforce Development

(DWD) found the discharge was for "misconduct," and as a result Lopez was ineligible for unemployment benefits. Lopez requested a hearing before an administrative law judge (ALJ).

¶ 3. At the hearing Lopez testified as follows. About once a day Jaeger would make derogatory comments to him concerning his national origin. Lopez's wife worked at Willow Foods, too, and Lopez and his wife had complained many times to their supervisor, Jeffrey Goers, about Jaeger's behavior. Another Hispanic co-worker made similar complaints to Goers. This co-worker had been in a fight with Jaeger for the same reason but the co-worker was not discharged. Jaeger's behavior did not change after Lopez talked to Goers. Lopez's wife also spoke to the union representative about Jaeger's behavior; however, Jaeger's behavior remained the same. On October 27, Lopez walked by Jaeger and Jaeger yelled another derogatory comment at him. This time Lopez hit Jaeger and chased him around until another supervisor separated them. According to Lopez, he decided to take matters into his own hands because management had not acted. Lopez acknowledged that he had probably told Goers that he would do the same thing again if he had the chance.

¶ 4. Goers testified as follows. About two months before the fight, Lopez did speak to him about Jaeger's comments. He admitted that there were similar problems with Jaeger and another Hispanic co-worker, which resulted in a fight and Jaeger being disciplined. After the fight with Lopez, Goers tried to have a conversation with both men, but Lopez again "went after" Jaeger and Goers had to separate the two of them. Goers spoke to both men separately and Jaeger told him that Lopez attacked him after he smiled and waved to Lopez; Goers accepted Jaeger's summary of

481

events as accurate. Lopez had told Goers that Jaeger had given him a dirty look and "talked badly" about him. Goers reported that when he told Lopez he was being discharged, Lopez responded that he did not care and "he would do it again."

¶ 5. Lopez argued to the ALJ that the derogatory comments about his national origin made by Jaeger on a daily basis, which continued even after Lopez and others had complained to management, were sufficient provocation for Lopez's assault of Jaeger. Therefore, Lopez contended the fight should not be considered misconduct.

¶ 6. Based on the testimony at the hearing, the ALJ made the following findings. On Lopez's last day of work he had a conflict with a co-worker when the co-worker made derogatory comments about Lopez's national origin. Lopez had had similar problems in the past, and on this day he physically assaulted the co-worker in response to the comments. After hitting the co-worker, Lopez's wife attempted to calm Lopez, but he chased after the co-worker in an attempt to further assault him. When Lopez was questioned about his actions, he stated he would take the same actions in the future if the situation recurred. He was then discharged. The ALJ concluded that Lopez chose to escalate the confrontation from name-calling to a physical assault, showed no remorse for his actions, and indicated he might take similar action in the future. The ALJ also concluded that however offensive the comments made to Lopez, they did not justify fighting at the workplace, and therefore, his actions amounted to misconduct connected with his work.

¶ 7. LIRC affirmed the ALJ's findings and conclusion, and Lopez appealed that decision to the circuit court. The circuit court affirmed LIRC's decision.

482

## DISCUSSION

██

¶ 8. Resolution of this appeal involves a determination of whether Lopez's conduct constituted "misconduct" under WIS. STAT. § 108.04(5) (1999–2000).[1] This presents a question of law, which we review de novo. *Charette v. LIRC*, 196 Wis. 2d 956, 959, 540 N.W.2d 239 (Ct. App. 1995). "Misconduct" is not defined in chapter 108; however, in *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259–60, 296 N.W. 636 (1941), the supreme court set forth the following definition:

> [T]he intended meaning of the term "misconduct," as used in sec. [108.04(5)], Stats., is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or inca-

---

[1] WISCONSIN STAT. § 108.04(5) provides in part:

**(5)** DISCHARGE FOR MISCONDUCT. An employee whose work is terminated by an employing unit for misconduct connected with the employee's work is ineligible to receive benefits until 7 weeks have elapsed since the end of the week in which the discharged occurs and the employee earns wages after the week in which the discharge occurs equal to at least 14 times the employee's weekly benefit rate under s. 108.05(1) in employment or other work covered by the unemployment insurance law of any state or the federal government.

All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

pacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

¶ 9. In deciding an appeal from a circuit court's order affirming or reversing an administrative agency's decision, we review the decision of the agency, not that of the circuit court. *Barnes v. DNR*, 178 Wis. 2d 290, 302, 506 N.W.2d 155 (Ct. App. 1993), *aff'd*, 184 Wis. 2d 645, 516 N.W.2d 730 (1994). Although we are not bound by an agency's conclusions of law, we may accord them deference. *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996). We have previously held that LIRC's determinations of misconduct are entitled to great weight deference, *see Charette*, 196 Wis. 2d at 960, and that is the degree of deference LIRC argues for in this case. However, Lopez contends that de novo review is required given the specific circumstances surrounding Lopez's conduct.

¶ 10. Generally we give great weight deference when: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the agency is long-standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. *UFE Inc.*, 201 Wis. 2d at 284. Under the great weight standard, we uphold an agency's reasonable interpretation of the statute if it is not contrary to the clear meaning of the statute, even if we conclude another interpretation is more reasonable. *Id.* at 287.

¶ 11. A de novo standard of review is applicable only when the issue before the agency is clearly one of first impression or when an agency's position on an issue has been so inconsistent so as to provide no real guidance. *Id.* at 285. Under this standard we will afford no weight to the agency's conclusion of law or interpretation. *Knight v. LIRC,* 220 Wis. 2d 137, 149, 582 N.W.2d 448 (Ct. App. 1998).[2]

¶ 12. Lopez first argues that de novo review is proper because this case presents an issue of first impression involving provocation and an employer's failure to address discriminatory working conditions. According to Lopez, the highly offensive and provocative nature of the ethnic slurs and the employer's refusal to take any action to stop them created a situation in which a fight was foreseeable and probable.

¶ 13. In an issue of first impression, an agency possesses no precedent for its interpretation because it is interpreting the statute for the first time. *Local No. 695 v. LIRC,* 154 Wis. 2d 75, 81, 452 N.W.2d 368 (1990). We have consistently held that an agency decision is not automatically one of first impression and subject to de novo review simply because the agency has been presented with a particular fact situation it has not previ-

---

[2] There are three distinct levels of deference granted to agency decisions: great weight deference, due weight deference, and de novo review. We apply due weight deference when the legislature has charged the agency with the enforcement of the statute in question, but the agency has not had sufficient experience in the area to place it in a better position than the court to make judgments regarding interpretation of the statute. *UFE Inc. v. LIRC,* 201 Wis. 2d 274, 286, 548 N.W.2d 57 (1996).

ously ruled upon. *Barron Elec. Coop. v. PSC*, 212 Wis. 2d 752, 764 & n.8, 569 N.W.2d 726 (Ct. App. 1997). Rather, if the agency has experience in administering the particular statutory scheme, derived from considering a variety of factual situations and circumstances, then great weight deference is appropriate. *Id.* We conclude that is the case here. The legislature has charged LIRC with the authority to make determinations regarding an employee's eligibility for benefits. WIS. STAT. § 108.09(6). LIRC has applied WIS. STAT. § 108.04(5) in many situations, and both parties point to prior decisions as the bases for their respective arguments. Consequently, LIRC has developed an expertise in applying the statute to a variety of fact situations.

¶ 14. Lopez also argues that de novo review of LIRC's decision is appropriate because prior LIRC decisions regarding misconduct and provocation are inconsistent. Lopez cites to *Helen R. Levy v. Astor Hotel Shoreline Real Estate*, Hearing No. 97603342MW (LIRC Jan. 16, 1998), in support of this argument. In *Levy*, a hotel manager addressed an employee for a rule violation, and during the discussion shook her finger in the employee's face. The employee asked the manager to lower her finger, and when the manager continued to shake her finger in the employee's face, the employee grabbed the manager's finger. The employee was discharged for assaulting the manager. LIRC determined that the employee's behavior was not misconduct because the employee's behavior was an isolated incident after thirty-six years of successful employment with no history of a belligerent or disruptive attitude, and the manager acted inappropriately by pointing her finger in the employee's face. Lopez argues that LIRC has created an arbitrary and unfair result in which an attack

486

prompted by a single incident of minor provocation is not misconduct while a fight resulting from persistent and far more serious provocation is considered misconduct.

¶ 15. We do not agree that LIRC has been inconsistent and arbitrary in past decisions. LIRC's past decisions are consistent with the general principle that an employee's use of physical force against another employee is misconduct. The different results in LIRC decisions are explained by differences in factual situations. In decisions in which hostile or aggressive comments were argued as sufficient provocation for a resulting fight, LIRC determined that the fight spurred by such comments without any other evidence of a threat to the employee's personal physical safety constituted misconduct. *See Ronald O. Rogers v. Wisconsin Knife Works Inc.*, Hearing No. 99001884JV (LIRC July 30, 1999) (employee's claim of self-defense rejected after employee stated he did not "walk away" because he did not want to be seen as a wimp); *Michael P. Brown v. Grove Gear Div.*, Hearing No. 96600981RC (LIRC May 24, 1996) (employee's reaction to co-worker's repeated statements "Hey tough guy" considered unreasonable and a disregard of employer's safety rules). *Levy* is consistent with these decisions. The manager's pointing of her finger in the employee's face in *Levy* may reasonably be considered to be provoking conduct of a physical nature beyond hostile or aggressive comments. Deference to LIRC's interpretation and application of Wis. Stat. § 108.04(5) will continue to provide uniformity and consistency in its application.

¶ 16. We conclude LIRC's decision whether Lopez's conduct constituted misconduct within the

487

meaning of WIS. STAT. § 108.04(5) is entitled to great weight deference. Therefore, it must be affirmed if it is reasonable. A decision is unreasonable if it directly contravenes the words of the statute, is clearly contrary to legislative intent, or is without a rational basis. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 662, 539 N.W.2d 98 (1995).

¶ 17. Lopez argues that LIRC's decision is unreasonable because he should not have had to put up with months of harassing behavior and his employer's failure to act, and his reaction was therefore understandable. He points to LIRC's failure to mention the testimony that Lopez and others notified Goers of Jaeger's discriminatory comments; this failure, according to Lopez, demonstrates that LIRC did not consider all the relevant facts in reaching its decision.

¶ 18. While we agree with Lopez that discriminatory working conditions are a serious matter, we reject his conclusion that his reaction may not reasonably be considered misconduct. LIRC could reasonably decide that Lopez's reaction was not justified and constituted misconduct even if he had, been subject to harassing comments by Jaeger, and Goers had failed to respond to his complaints. LIRC's failure to discuss the testimony of the complaints to Goers does not mean LIRC did not consider it. Rather, in LIRC's view the prior complaints to Goers did not alter its conclusion that Lopez's reaction to Jaeger's verbal harassment was misconduct.

¶ 19. We conclude that LIRC could reasonably decide that Lopez's physical assault of another employee in reaction to discriminatory, harassing comments of a non-physical nature was misconduct, even though the employer may have failed to properly re-

spond to Lopez's past complaints.[3] We note that fair employment laws generally prohibit discrimination based on race, creed, color, national original, ancestry, age, sex, disability, arrest or conviction record, sexual orientation, marital status, and membership in the military. WIS. STAT. §§ 111.31–111.395. A victim of harassment in the workplace may file a formal complaint with the Equal Rights Division of DWD or with the U.S. Equal Employment Opportunities Commission. Under Wisconsin's fair employment laws, an employer may not retaliate against an employee for filing a complaint to enforce his or her right to work in an environment free of discrimination. Section 111.322(3). These laws offer a remedy and protection for an employee who is faced with the situation Lopez described in his testimony.

¶ 20. LIRC's decision is reasonable in all other respects. LIRC's interpretation of "misconduct" does not directly contravene the statute and the definition set forth in *Boynton Cab Co.* In addition, LIRC's decision is not directly contrary to legislative intent concerning discharge due to misconduct. LIRC considered the facts presented, in light of the principles developed in its prior decisions, and came to a reasonable conclusion. Therefore, we affirm the circuit court's order.

*By the Court.*—Order affirmed.

---

[3] Lopez cites to decisions in other jurisdictions as support for concluding a fight involving harassment is not misconduct. However, our supreme court has rejected the argument that Wisconsin courts should look to other jurisdictions' interpretations of unemployment compensation acts to interpret Wisconsin's unemployment compensation act. *Bernhardt v. LIRC*, 207 Wis. 2d 292, 302, 558 N.W.2d 874 (Ct. App. 1996).