WISCONSIN COMMISSIONER OF INSURANCE and Manager of the Local Government Property Insurance Fund, Connie L. O'Connell, Assistant Deputy Commissioner Eileen Mallow, and Local Government Property Insurance Fund Program Officer Danford Bubolz, Petitioners-Plaintiffs-Appellants,

v.

FIBER RECOVERY, INC., Millwaste Recovery, Inc. and Marathon County, Respondents-Defendants-Respondents.

Court of Appeals

*No. 03–3012. Submitted on briefs May 6, 2004.—Decided August 26, 2004.*

2004 WI App 183

(Also reported in 687 N.W.2d 755.)

497

· On behalf of the petitioners-plaintiffs-appellants, the cause was submitted on the briefs of *Charlotte Gibson*, asst. attorney general, and *Peggy A. Lautenschlager*, attorney general.

On behalf of the respondents-defendants-respondents Fiber Recovery, Inc. and Millwaste Recovery, Inc., the cause was submitted on the brief of *Jon G. Furlow* and *John C. Scheller, Michael Best & Friedrich, LLP*, Madison.

On behalf of the respondents-defendants-respondents Marathon County, the cause was submitted on the brief of *Richard G. Niess, Coyne, Niess, Schultz, Becker & Bauer, S.C.*, Madison.

Before Deininger, P.J., Vergeront and Lundsten, JJ.

¶ 1. VERGERONT, J. This appeal concerns a dispute over whether the policy issued by the Local Government Property Fund to Marathon County covers loss resulting from a fire at a facility that had been conveyed by the County to Fiber Recovery, Inc. prior to the fire. The circuit court affirmed the decision of the administrative law judge (ALJ) that there was coverage, and the Wisconsin Commissioner of Insurance and

Manager of the Fund appeals.[1] The Commissioner contends that WIS. STAT. § 605.02,[2] which describes the kinds of property that local governmental units may insure in the Fund, limits coverage to property the unit either owns or has in its care, custody, and control. The Commissioner also contends that the terms of the policy are consistent with this limitation, and that the facility was therefore not covered.

¶ 2. We conclude the insurance policy covers the facility—both the building and the personal property inside of it. Although we conclude that WIS. STAT. § 605.02 does not plainly preclude the Fund from providing this coverage, for the reasons explained below we do not resolve the ambiguity in the meaning of the phrase in § 605.02, "property for which [the local governmental unit] may be liable."

## BACKGROUND

¶ 3. The Fund is established by statute to provide property insurance for local governments. WIS. STAT. § 605.02. "Any local government may insure in [the Fund] its property or property for which it may be liable in the event of damage or destruction." *Id.*

¶ 4. From at least 1989 until June 1997, Marathon County owned a refuse-derived fuel plant on its

---

[1] The Commissioner of Insurance and Manager of the Fund at the time was Connie O'Connell. She and two other individuals associated with the Fund are the plaintiffs and the appellants. For ease of reference, we will refer to the appellants collectively as "the Commissioner."

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

landfill property located in Ringle (the Ringle facility).[3] During that time the Ringle facility was insured against a number of perils, including fire, by policies issued by the Fund and renewed annually.

¶ 5. In June 1997, the County sold the building and equipment at the Ringle facility to Fiber Recovery pursuant to the terms of an asset purchase agreement and quit claim deed. The real estate on which the facility was located was not sold to Fiber Recovery but was leased to it for a nominal amount. The terms of payment were $250,000 payable in cash at closing, plus $1,000,000 paid in installments from income generated; the County was entitled to receive a mortgage encumbering the real property assets as security for Fiber Recovery's performance. Title to the facility was to indefeasibly vest with Fiber Recovery when full payment was made. Until then, Fiber Recovery could not sell the facility to a third party without Marathon County's prior written approval, and title would automatically revert to the County if Fiber Recovery abandoned the facility, with abandonment defined to include cessation of business for more than a specified number of days.

¶ 6. Paragraph 15 of the asset purchase agreement required Fiber Recovery to maintain at its expense "casualty insurance on its personal property, equipment fixtures and leasehold improvements that comprise any part of the Assets or the Plant," but Fiber Recovery had the option of electing to have the County maintain this insurance, with Fiber Recovery reimburs-

[3] Except as otherwise noted, the facts in paragraphs 4 through 9 are taken from the stipulation of facts the parties submitted to the ALJ, which the ALJ adopted.

ing the County for the cost. The County, Fiber Recovery, and the Commissioner stipulated before the ALJ that:

> 7. Pursuant to Paragraph 15 ... Fiber Recovery, Inc. elected to have Marathon County purchase and maintain insurance on the building, personal property, equipment fixtures, and leasehold improvements at the Ringle facility, and Fiber Recovery, Inc. thereafter reimbursed Marathon County for the premium costs of such insurance.

> 8. Marathon County, in turn, continued the insurance coverage for the Ringle facility with the [Fund] from 1997 through 2000.

¶ 7. The asset purchase agreement also provided that both Fiber Recovery and the County had to indemnify and hold the other harmless for any liabilities arising out of their breach of the agreement.

¶ 8. On March 7, 2000, a fire occurred at the Ringle facility, causing significant damages. The policy in effect during calendar year 2000 listed the Ringle facility on the Statement of Values, with the building valued at $1,161,485 and its contents at $1,646,855. At the time of the fire there was at least $940,000 still due the County from Fiber Recovery.[4]

¶ 9. The County timely notified the Fund of the fire loss and provided the asset purchase agreement and the quit claim deed to the adjuster acting on behalf of the Fund. The adjuster recommended that payment be made pursuant to a partial proof of loss for $108,041.57, with portions earmarked for Fiber Recovery and its architect; the Fund issued a check to the County in that amount, and the County paid Fiber Recovery and its

---

[4] This fact was not stipulated to, but the ALJ found it as fact based on the undisputed submissions of affidavits.

architect as instructed. However, after the adjuster drafted a second partial proof of loss, the Fund raised the issue of coverage. Ultimately, the Fund denied the County's claim on the ground that the fire loss involved property owned by Fiber Recovery, not by the County, and Fiber Recovery was not named as an additional insured on the policy. The Fund rejected the County's contention that, because the County was obligated under the agreement to maintain insurance once Fiber Recovery elected that option, the damaged property was "property for which [the County] may be liable in the event of damage or destruction" within the meaning of WIS. STAT. § 605.02.

¶ 10. The County requested a contested case hearing on coverage. An ALJ from the Department of Administration, Division of Hearing and Appeals was assigned the case, with the Commissioner ordering that the ALJ's decision would be the final decision in the matter. Fiber Recovery, the County, and the Commissioner all moved for summary judgment on the issue of coverage. The parties stipulated to many of the material facts and the ALJ concluded that all other material facts regarding the issue of coverage were undisputed.

¶ 11. The ALJ decided there was coverage, making the following conclusions of law: (1) WISCONSIN STAT. § 605.02 plainly does not require that the local authority own the damaged or destroyed property; the phrase "may be liable" is an alternative basis for coverage and is not ambiguous; (2) even if there were an ambiguity, the legislative history relied on by the Commissioner supports the construction that ownership by the local governmental unit is not required and that private interests are protected if they are able to establish a right against the governmental unit for damages or destruction of the property; and (3) based

on the undisputed facts, there were a number of grounds on which the County "may be liable" for the loss at the Ringle facility, including the County's agreement to maintain insurance at Fiber Recovery's option and the County's reversionary interest. The ALJ also concluded that the Ringle facility was plainly covered under the policy, finding that the Fund likely knew that Fiber Recovery was an additional insured under the policy, and that the County did not violate any program rule or contractual requirement by not informing the Fund in writing of the sale to Fiber Recovery.[5]

¶ 12. The Commissioner sought judicial review of the ALJ's decision and the circuit court affirmed.

## DISCUSSION

¶ 13. On appeal, the Commissioner argues that the language in WIS. STAT. § 605.02, "property for which [the local governmental unit] may be liable in the event of damage or destruction" means property within the care, custody, and control of a local government, such as

---

[5] The ALJ made factual findings concerning the Fund's conduct and past practices that may support coverage under alternative theories. However, because we conclude that there is coverage under the terms of the policy, it is not necessary to recite these findings.

The ALJ also decided that various provisions in WIS. STAT. ch. 631, which governs insurance policies generally, precluded the Fund from denying coverage. The circuit court agreed. It is not necessary to address these statutory provisions because we conclude there is coverage under the policy. Thus, we do not address the dispute between the parties over whether the County waived the right to rely on one of the provisions of ch. 631 on this appeal.

a bailment.[6] According to the Commissioner, the terms of the policy must be read in conjunction with WIS. STAT. ch. 605, and the language of the policy is consistent with this statutory limitation.

¶ 14. Both Fiber Recovery and the County view the insurance policy as the starting point in the analysis, and, they assert, the policy provides coverage. Both view WIS. STAT. ch. 605 as authorizing coverage: Fiber Recovery construes the disputed statutory phrase to mean property in which the local government has an insurable interest, while the County construes it to include property a local governmental unit is contractually obligated to insure. The County also contends that the preceding phrase "its property" includes nontangible property such as the reversionary interest the County has in the Ringle facility.

I. Applicable Legal Standards

¶ 15. Because this action seeks judicial review of an agency decision, we review the decision of the ALJ, not that of the circuit court. *Lopez v. Labor & Indus. Review Comm'n*, 2002 WI App 63, ¶ 9, 252 Wis. 2d 476, 642 N.W.2d 561. The issues in dispute involve the construction of a statute, which presents a question of law, *Seider v. O'Connell*, 2000 WI 76, ¶ 26, 236 Wis. 2d 211, 612 N.W.2d 659, and the construction of an insurance contract, which is also a question of law. *Folkman v. Quamme*, 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857. We review questions of law de novo. *Id.*

---

[6] WISCONSIN STAT. § 605.23(1) repeats part of this phrase in providing that "[t]he manager shall determine within a reasonable time any loss on insured property owned by a local governmental unit or for which the unit is liable . . . ."

Although we may give deference to an agency decision on a question of law where the agency has expertise that bears on that question, *see Lopez*, 252 Wis. 2d 476, ¶¶ 9–10, none of the parties suggest that the Division of Hearings and Appeals has expertise in the construction of Wis. Stat. ch. 605 or of the insurance contract that would make deference appropriate. *See Roehl Transp., Inc. v. Wisconsin Div. of Hearings & Appeals*, 213 Wis. 2d 452, 461, 570 N.W.2d 864 (Ct. App. 1997) (reviewing de novo a decision of the Division of Hearings and Appeals on a tax issue because it is a division of a management services agency and has no experience, expertise, or specialized knowledge in the subject matter of the hearing). Accordingly, our review is de novo.

¶ 16. When we are asked to construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation, but as part of a whole, in relation to the language of surrounding or closely related statutes, and reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48. If, employing these principles, statutory language is ambiguous—that is, capable of being understood by reasonably well-informed persons in two or more senses —then we may employ sources extrinsic to the statu-

507

tory text. *Id.*, ¶¶ 47, 50. These extrinsic sources are typically items of legislative history. *Id.*, ¶ 50.

¶ 17. When we construe an insurance policy, our aim is to give effect to the intent of the parties, expressed in the language of the policy itself. *Folkman*, 264 Wis. 2d 617, ¶ 12. We give the language its common and ordinary meaning, that is, what a reasonable person in the position of the insured would understand it to mean. *Id.*, ¶ 17. If the language of the policy is ambiguous, we construe it in favor of the insured. *Id.*, ¶ 13.

II. Wis. Stat. ch. 605

¶ 18. Because the Commissioner contends that the policy must be construed in light of Wis. Stat. ch. 605, we begin with a discussion of the statute. The pertinent language reads: "property for which [the local governmental unit] may be liable in the event of damage or destruction." Wis. Stat. § 605.02. In arguing that this language means that property must be within the care, custody, and control of a local government, the Commissioner relies on two federal cases construing similar language in insurance contracts: *House of Lloyd, Inc. v. Versa Corp.*, 86 F.3d 847, 851–52 (8th Cir. 1996) ("property of others for which the insured may be liable"); *Paktank Louisiana, Inc. v. Marsh & McLennan, Inc.*, 688 F. Supp. 1087, 1090–91 (E.D. La. 1988) ("property that the insured does not own for which the insured may be liable").

¶ 19. In the Eighth Circuit case, *House of Lloyd*, the court concluded the policy language was plain and limited coverage to instances where the property was in

the care, custody, and control of the insured. *House of Lloyd, Inc.*, 86 F.3d at 852. Therefore, the court held, it did not cover property that was damaged by fire at a facility after the insured, a subcontractor, had delivered the property to the facility, but before the subcontractor had installed it. *Id.* at 851. The court reasoned that the subcontractor was not a bailee and the contractual duty to install the property did not make it legally or equitably responsible for the property. *Id.* at 850.

¶ 20. In the federal district court case, *Paktank*, the court held that the language unambiguously referred to situations where the insured has assumed responsibility for property by virtue of a bailment, rental, leasing, or borrowing agreement. *Paktank*, 688 F. Supp. at 1090–91. The court concluded that a marine terminal business that had a license with the owner of a docking facility did not have an interest in the docking facility that met this definition, because under New York law a "license does not convey any interest in the property itself such as would be associated with an existing liability or responsibility for the property." *Id.* at 1091.

¶ 21. The Commissioner does not tie the construction of the insurance contract provisions in the above federal cases to the principles of statutory construction that we employ in Wisconsin. Indeed, we are uncertain whether the Commissioner's position is that the statutory phrase "property for which [the local governmental unit] may be liable" plainly means property in the care, custody, and control of the insured, or whether the Commissioner's position is that the phrase is ambiguous, but this interpretation is the more reasonable one. We conclude the interpretation proposed by the Commissioner is a reasonable one, but the Commissioner has pointed to nothing in the text or

structure of ch. 605 that leads to the conclusion either that it is the only reasonable interpretation or that it is the more reasonable interpretation. More particularly, neither of the federal cases, nor anything the Commissioner points to in the text or structure of ch. 605, persuades us that the liability the County would have if it had not maintained insurance—as it was obligated to do under the purchase agreement once Fiber Recovery elected that option—is plainly not included in the statutory phrase "property for which [the local governmental unit] may be liable in the event of damage or destruction."

¶ 22. The Commissioner also relies on two notes to Laws of 1973, ch. 117, § 10, which renumbered and amended the prior version of ch. 605.[7] However, neither of these notes shows that the Commissioner's construction is the only reasonable one or the more reasonable one:

> The expression "may be liable" does not imply that there is coverage for the private owners of the property. Governmental units are protected by this fund but private interests are not, except indirectly to the extent that they are able to establish a right against the governmental unit for damages to or destruction of their property.

Note, 1973, WIS. STAT. § 605.02.

> The fact that the property fund has no option but to cover public property on request, and in fact to do it at extremely favorable rates, should lead the legislature to protect the fund against unwise contractual assumption of risks that would normally lie elsewhere, such as

---

[7] These two notes appear in Laws of 1973, ch. 117, § 10, following the relevant sections. The source of the notes is not identified.

on a builder .... The property fund has no option but to insure and should not be subject to having private persons thrust upon it as insureds, without its consent.

Note, 1973, WIS. STAT. § 605.24(3).[8]

¶ 23. Again, the Commissioner's discussion of these comments is not tied to principles of statutory construction. We therefore do not know if the Commissioner views them as extrinsic sources or not, and, if viewed as extrinsic sources, whether the Commissioner views them as reinforcing a plain meaning[9] or, instead, as resolving an ambiguity. Ultimately, however, these questions do not need to be answered on this appeal. As we have already stated, the Commissioner's proposed interpretation is not the only reasonable meaning of the statutory language, and the notes do not indicate that it is the more reasonable one. The first note suggests that "property for which [the local governmental unit] may be liable" means property for which private owners "are able to establish a right against the governmental unit for damages to or destruction of their property," but this meaning simply restates the ambiguity; it does not resolve it. It is reasonable to understand such a right as

---

[8] WISCONSIN STAT. § 605.24(3) provides:

(3) RIGHT OVER AGAINST THIRD PERSONS. The property fund may name other persons as additional persons protected under s. 605.02, but unless it does so the fund shall have any right of recovery by subrogation or otherwise against such persons that a private insurer would have and shall not lose such right because the governmental unit protected has after commencement of the coverage waived any right of recovery it would otherwise have had, or has thereafter contracted to assume the risk that general law would have placed elsewhere.

[9] Extrinsic sources such as legislative history are sometimes used to confirm that the meaning of the statute is plain. *Seider v O'Connell*, 2000 WI 76, ¶¶ 51–52, 236 Wis.2d 211, 612 N.W.2d 659.

including Fiber Recovery's right to recover under a breach of contract theory if the County did not maintain insurance on the Ringle facility. The second note does not appear to limit what the Fund is authorized to do because of the addition of "without its consent." Thus, it does not support the view that the Fund may not choose to insure a private person, but appears to suggest that it may.

¶ 24. As for the County's argument that its reversionary[10] interest in the Ringle facility is "its property" within the meaning of Wis. Stat. § 605.02, the Commissioner's reply is limited to the assertion that Wis. Stat. ch. 605 applies only to property "owned or within the care, custody and control of a local government," with another reference to the two legislative notes quoted above. This, however, is not the wording of the statute, and the Commissioner does not develop an argument based on the text and structure of the statute to support an interpretation that plainly excludes the County's reversionary interest as "its property." And, as we have already explained, the second note does not support a limitation on the Fund's authority to choose what property or property owners to insure.

¶ 25. In summary, we reject the Commissioner's argument that Wis. Stat. § 605.02 plainly prevents the Fund from choosing to insure the Ringle facility after its purchase by Fiber Recovery under the terms of this purchase agreement, where Fiber Recovery has chosen to exercise its option to have the County maintain

---

[10] The Commissioner asserts that the County's right under the asset purchase agreement to an automatic reversion of title if Fiber Recovery abandons the facility is not a true "reversionary interest." We use this term because it is a convenient description; whether the interest is "reversionary" in a more technical sense is not relevant to our decision.

512

insurance and where the County has a reversionary interest in the facility because of the installment payments still owing. We also reject the argument that the Commissioner's interpretation is the more reasonable one. However, we do not arrive at a definitive interpretation of § 605.02 because the arguments are not sufficiently developed and, ultimately, a definitive interpretation is unnecessary to the resolution of this appeal.

III. Insurance Policy

¶ 26. Before discussing the parties' arguments on the proper construction of the insurance policy, we set forth the relevant terms. The preamble states:

> In consideration of the provisions of this policy, the payment of premium, and in accordance with the provisions of Ch. 605, Wisconsin Statutes, the Fund insures those named on the Declaration page for the coverages indicated by amount of coverage and premium.

Marathon County is the named insured on the declaration page and there is no additional insured named.

¶ 27. The "Property Covered" section lists numerous categories of property covered under the policy and includes "[b]uildings and structures listed on the Statement of Values" and "[p]ersonal property [defined as 'items usually located in a building'] you own or are legally responsible for insuring." "[Y]ou" and "your," the preamble states, refer to the named insured on the declarations page, which is Marathon County. The Statement of Values instructs to cross out "[a]ny buildings you sold, tore down and/or are no longer responsible for insuring" and to add "any new buildings owned

and/or leased." As we have already noted, the Ringle facility was listed on the Statement of Values.

¶ 28. The Commissioner first argues that because the preamble states that the Fund insures "in accordance with the provisions of Ch. 605," the policy plainly informs the insured that there is no coverage under the policy that is not authorized by WIS. STAT. ch. 605. In the Commissioner's view, this reference to ch. 605 plainly informs the insured that only property owned or within the care, custody, and control of the local government is insured under the policy. We reject this argument for two reasons. First, we have already concluded that the Commissioner's construction of the statute is not the only reasonable one. Thus, if other policy terms are ambiguous, the reference to the statute does not resolve those ambiguities. Second, the very phrasing of the preamble's reference to the statute is ambiguous. A reasonable insured could understand that the preamble is reciting the statute as the authority under which the Fund is acting in issuing the policy. This construction is at least as reasonable as the one the Commissioner proposes—that the insured is supposed to read the statute and interpret the policy terms in light of the statute.

¶ 29. The Commissioner next argues that the instructions on the Statement of Values to cross out "[a]ny buildings you sold, tore down and/or are no longer responsible for insuring" and to add "[t]o the last page, any new buildings owned and/or leased" plainly tell the insured that "responsible for insuring" means "legally responsible [to insure because of] ownership or lease." The Commissioner apparently is of the view that this is the same as the statutory construction the Commissioner has argued for, but that is not correct.

There are certainly situations besides leasing in which property is in the care, custody, and control of one not the owner—such as bailment, discussed in the cases on which the Commissioner relied in its statutory construction argument.

¶ 30. In addition to the discrepancy between the scope of the statutory coverage and the scope of the insurance coverage advocated by the Commissioner, the more fundamental problem is that the Commissioner's argument does not analyze the policy language as it would be understood by a reasonable insured in the position of the County and does not take into account the coverage section of the policy. The policy plainly provides coverage for buildings and structures listed on the Statement of Values, and there is no dispute that the Ringle facility was listed on the Statement of Values at the time the County sold it. The language the Commissioner relies on instructs the insured to cross out listed buildings that the insured "sold, tore down and/or [is] no longer responsible for insuring." There is no definition in the policy for "responsible for insuring." A reasonable insured in Marathon County's position could understand this phrase to include its contractual obligation to maintain insurance if Fiber Recovery makes that election.

■■■

¶ 31. At this point we address the Commissioner's argument that paragraph 15 of the asset purchase agreement does not cover insurance on the building, but only on "personal property, equipment fixtures and leasehold improvements." In a footnote in the reply brief, the Commissioner acknowledges stipulating before the ALJ that "[p]ursuant to Paragraph 15 . . . Fiber elected to have Marathon County maintain insurance on the building[,]" but, the Commissioner states, this is

"a legal conclusion to which the parties could not stipulate and obviously a mistake in light of the plain language of the Agreement." According to the Commissioner, because the asset purchase agreement did not obligate the County to maintain insurance on the building, there is no reasonable construction of "responsible for insuring" that would apply to the building, as opposed to the personal property.

¶ 32. In essence, the Commissioner is asking to be relieved of the stipulation the Commissioner made before the ALJ. We decline to grant that relief. We do not agree with the Commissioner that paragraph 15 of the asset purchase agreement plainly does not address insurance on the building. Arguably "leasehold improvements" include buildings. In addition, it is arguably unreasonable from the County's standpoint to require that there be insurance on everything Fiber Recovery is purchasing except the building, given that Fiber Recovery is making installment payments to the County and the County retains a reversionary interest in the real property assets until the installments are completely paid. Had the County not entered into the stipulation it did and instead advanced the construction of the asset purchase agreement before the ALJ that is now does, there likely would have been evidence presented on the intent of Fiber Recovery and the County with respect to paragraph 15, a question of fact for the ALJ to decide as fact finder. *See Armstrong v. Colletti*, 88 Wis. 2d 148, 153, 276 N.W.2d 364 (1979) (construction of contract involves determining intent of parties; if the contract is ambiguous, the question of intent is one for trier of fact). As it was, the Commissioner not only entered into the stipulation, but made no distinction in briefing before the ALJ between the building and other property with respect to the County's obliga-

tion to insure. At the same time, Fiber Recovery and the County in their briefs clearly relied on the stipulation in their arguments. The ALJ accepted the stipulation and it was one of the grounds on which it concluded that the County "may be liable" for the loss at the Ringle facility. The Commissioner had the opportunity, upon reading the briefs of the other parties and again upon receipt of the ALJ's decision, to move for relief from the stipulation at a time when the factual dispute underlying the construction of paragraph 15 could have been resolved. However, we see nothing in the record indicating that the Commissioner brought this issue to the attention of the ALJ.

¶ 33. We recognize that in briefing in the circuit court, the Commissioner did make a distinction between insurance for personal property and the building, characterizing paragraph 15 as requiring insurance on the former but not the latter. However, the circuit court, like this court, reviews the facts as found by the ALJ, and, without a motion for a remand to take additional evidence on the proper construction of paragraph 15, the stipulation, accepted by the ALJ was binding.[11] Therefore, for purposes of this appeal, we hold the Commissioner to the stipulation and conclude that paragraph 15 of the asset purchase agreement did require insurance on the building as well as on personal property. Thus, a reasonable insured in the County's

---

[11] The circuit court apparently accepted the Commissioner's argument that paragraph 15 applied only to personal property, but concluded that the policy nonetheless plainly covered the building because the building was listed on the Statement of Values and the coverage section stated that buildings and structures listed on the Statement of Values were covered. The circuit court therefore did not need to address the Commissioner's disclaimer of the stipulation.

position could understand "responsible for insuring" to include its contractual obligation to maintain insurance on both the building and the personal property it sold to Fiber Recovery, if Fiber Recovery made that election. Similarly, a reasonable insured in Marathon County's position could understand from the deletion instruction that it did not need to delete the building from the Statement of Values upon the sale of the facility to Fiber Recovery.

¶ 34. We do not agree with the Commissioner that the instruction to add "any new buildings owned and/or leased" plainly tells an insured that only owned or leased buildings are covered. A reasonable insured that—like Marathon County—did not have any property to add to the Statement of Values could assume that the instruction on what property to add would not inject a limitation on coverage that was not stated in the coverage section, and was not explained in the instructions on what to cross out. Moreover, the "sold, tore down and/or are no longer responsible for insuring" language of the deletion instruction tracks the coverage language for personal property "you own or are legally responsible for insuring." This adds to the likelihood that a reasonable insured in the County's position would not understand that "responsible for insuring" with respect to buildings means only leased buildings.

¶ 35. In summary, we conclude that the policy language "legally responsible for insuring" can be understood by a reasonable person in the position of the County to include personal property of another that the insured is obligated to insure by contract. If the Fund wanted the limitation it now seeks, it should have defined the term in the policy more narrowly.

518

¶ 36. We also conclude that the policy is ambiguous concerning the criteria for coverage of buildings and structures. The coverage section refers only to the buildings and structures listed on the Statement of Values, and a reasonable insured could understand from the deletion instruction that a building that it no longer owns, but which it is responsible under a contract for insuring, may properly remain on the Statement of Values. We therefore adopt this construction, rather than the Commissioner's construction that the building must be owned or leased. The Fund could have specified in the coverage section the criteria for listing buildings and structures on the Statement of Values, but it did not do so. It has, moreover, collected a premium from the County based on the buildings and structures listed. Finally, there is no contention that the County engaged in any misrepresentation concerning its relationship to the Ringle facility. The ALJ found there were no misrepresentations and the Commissioner does not argue that this finding was in error.

## CONCLUSION

¶ 37. The insurance policy covers the Ringle facility—both the building and the personal property inside it. Although we conclude that Wis. Stat. § 605.02 does not plainly preclude the Fund from providing this coverage, for the reasons stated above we do not resolve the ambiguity in the meaning of "property for which [the local governmental unit] may be liable."

*By the Court.*—Order affirmed.