Cesare BOSCO, Plaintiff-Respondent,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Defendant,

A.T. POLISHING COMPANY and Shelby Insurance Company, d/b/a Insura Property & Casualty Insurance Company, Defendants-Appellants-Petitioners.

Supreme Court

*No. 03–0662. Oral argument March 9, 2004.—Decided June 15, 2004.*

2004 WI 77

(Also reported in 681 N.W.2d 157.)

586

Sykes, J., took no part.

For the defendants-appellants-petitioners there were briefs by *Michael C. Frohman* and *Kasdorf, Lewis & Swietlik, S.C.*, Milwaukee, and oral argument by *Michael C. Frohman*.

For the plaintiff-respondent there was a brief by *Gregory A. Pitts* and *Schoone, Leuck, Kelley, Pitts & Knurr, S.C.*, Racine, and oral argument by *Gregory A. Pitts*.

¶ 1. JON P. WILCOX, J. This case is an action for bad faith penalties under Wisconsin's Worker's Compensation Act. *See* Wis. Stat. § 102.18(1)(bp) (2001–02).[1] The defendants, A.T. Polishing Company and its insurer, Shelby Insurance Company (Shelby),[2] appeal from a published court of appeals decision, *Bosco v. LIRC*, 2003 WI App 219, 267 Wis. 2d 293, 671 N.W.2d 331. The court of appeals affirmed a Kenosha County Circuit Court order, Bruce E. Schroeder, Judge, which reversed the conclusion of the Labor and Industry Review Commission (LIRC) that it was fairly debatable whether Wis. Stat. § 102.23(5) required Shelby and A.T. Polishing to make payments to A.T. Polishing's employee, Cesare Bosco, during the appeal on the merits of his worker's compensation claim, even though Shelby conceded that Bosco suffered permanent total disability caused by occupational exposure while he was employed

---

[1] All references to the Wisconsin Statutes are to the 2001–02 edition unless otherwise noted.

[2] A.T. Polishing has been continuously represented throughout this litigation by its insurance carrier, Shelby. Therefore, except where it is necessary to refer to each party individually, this opinion refers to both entities collectively as Shelby.

at A.T. Polishing. For the reasons discussed below, we affirm the decision of the court of appeals.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶ 2. This case has an extremely lengthy and complex procedural history, which is set forth in full below in order to appreciate the issues involved in this appeal. Bosco was employed by A.T. Polishing from 1987 until November 5, 1996. In 1993 Bosco saw a doctor regarding breathing difficulties; however, Bosco continued working at A.T. Polishing until November 1996 when his doctor took him off work due to asthma. On April 4, 1997, Bosco filed an Application for Hearing with the Worker's Compensation Division of the Department of Industry, Labor and Human Relations (DILHR) regarding his lung disease.

¶ 3. In his application, Bosco identified the date of injury as "occupational; 7/22/96" and listed his last day of work before disability as "11/96." Bosco alleged that he developed pulmonary problems due to exposure to irritants while employed at A.T. Polishing. Further, Bosco claimed possible total disability as a result of this injury. Shelby, A.T. Polishing's insurer in 1996, filed an answer on June 5, 1997, wherein it admitted that "[t]he accident or occupational exposure alleged in the application actually occurred on or about the time claimed[,]" but denied that "[t]he accident or disease causing injury arose out of the alleged employment." Shelby also denied that Bosco was temporarily or permanently disabled. Shelby left blank the section of the answer that stated: "State exactly what matters are in dispute and your reason for denying liability."

¶ 4. On February 4, 1998, a hearing was held in front of Administrative Law Judge (ALJ) Thomas R.

Jones. At the hearing, the ALJ noted that Shelby admitted it was on the risk from 1994 until Bosco's last day of work and stated: "The defense . . . is the insurance carrier which has been variously known as Shelby Mutual and other names, and it now is willing to concede that an occupational illness exists, though it's not entirely sure that it's the right insurance company." Further, the ALJ noted:

> Before we went on the record Mr. Frohman [counsel for Shelby] asked if he could delay things so he could think about bringing in another insurance carrier to help carry the load. I denied that request as the present medical filings don't seem to indicate that any earlier period of breathing problem was anything but a temporary and separate problem.

When the ALJ asked counsel for Shelby if he had any further comments on the issues, counsel for Shelby stated: "No, Your Honor, I think you had it right."

¶ 5. The ALJ's August 21, 1998, decision and order noted that Shelby conceded Bosco suffered the alleged injury but disputed that Bosco was 100 percent totally disabled. The ALJ found that Bosco was permanently totally disabled due to his work exposure since November 5, 1996. The ALJ ordered that A.T. Polishing and Shelby pay total disability benefits from November 5, 1996, for the rest of Bosco's life. The ALJ further ordered that such payments were to commence in 21 days from the date of the order.

¶ 6. Shelby appealed to LIRC, arguing that the ALJ's finding of the date of disability—November 1996 —was incorrect as a matter of law and that the correct date of injury was 1993. Shelby argued that, as a matter of law, the date of injury for occupational disease is the time when the disability first occurs and that liability is set at that time. Shelby asserted that the medical

evidence established that Bosco's disability first occurred in 1993. In a decision dated April 27, 1999, LIRC rejected Shelby's claim:

> In addition, applicant's application alleged an occupational disease in July of 1996, and respondent, in its answer, admitted that the accident or occupational exposure occurred on or about the time claimed. The respondent never amended its answer. Apart from the medical evidence recited above, the commission could not now find an earlier date of injury, when a different carrier was on the risk; that carrier was never given any opportunity to present evidence on its behalf because the employer had originally conceded to a July of 1996 date of injury.

¶ 7. Thereafter, Bosco's attorney sent repeated requests that Shelby pay the permanent total disability benefits pursuant to § 102.23(5).[3] Shelby, contending that the statute did not apply unless there were two or more insurers joined in the action, did not pay and commenced an action for review with the circuit court of Kenosha County. On December 15, 1999, the circuit court affirmed LIRC's decision, noting that "[t]he answer which was filed raised no issue respecting the liability of the plaintiff insurer; the plaintiff employer's liability is not questioned." The circuit court remarked that the first time Shelby challenged the date of injury was when it requested a continuance at the administrative hearing, nearly eight months after filing its answer. The court emphasized that no amendment was

---

[3] Wisconsin Stat. § 102.23(5) provides: "The commencement of action for review shall not relieve the employer from paying compensation as directed, when such action involves only the question of liability as between the employer and one or more insurance companies or as between several insurance companies."

made to the answer and no effort was made to bring in another insurer until that point in the proceeding. The circuit court held that because a request for continuance must be brought within a reasonable time before the date of the hearing under Wis. Admin. Code § DWD 80.09(2)(Nov., 2002)[4] and the decision to grant a continuance is committed to the discretion of LIRC,[5] it was required to uphold the decision of the commission.

¶ 8. Shelby again appealed, and the court of appeals affirmed the circuit court, noting that Shelby had essentially waived any date of injury defense by making a pleading error. *A T Polishing Co. v. LIRC*, No. 00–0343, unpublished slip op., ¶ 1 (Wis. Ct. App. Oct. 18, 2000). The court of appeals reasoned:

> By not making a timely amendment to the answer, Bosco was not apprised of the fact that Shelby wanted to contest the date of injury and Sentry Insurance, the worker's compensation carrier for A T Polishing in 1993, was not made a party to the lawsuit. Therefore, Shelby failed to join the issue and was not free to belatedly claim, prior to the start of the hearing before the ALJ, that July 22, 1996, was not the date of injury.

*Id.*, ¶ 6. Therefore, the court of appeals concluded that "LIRC's refusal to allow argument on the issue of date of injury was not only reasonable, it was compelled." *Id.*, ¶ 5.

¶ 9. This court denied Shelby's petition for review on January 16, 2001. The merits of the underlying worker's compensation claim have therefore been fi-

---

[4] All subsequent references to the Wisconsin Administrative Code are to the November 2002 version unless otherwise noted.

[5] *See* Wis. Stat. § 102.17.

nally adjudicated and are no longer at issue. Shelby did not make any payments to Bosco until this court denied its petition for review.

¶ 10. Meanwhile, on January 14, 2000, Bosco filed an amended Application for Hearing, seeking bad faith penalties under § 102.18(1)(bp)[6] and Wis. Admin. Code § DWD 80.70(2)[7] for failure to pay the permanent total disability award ordered by the ALJ pending appeal, as required by § 102.23(5). On February 18, 2002, the ALJ entered an order rejecting Bosco's claim for bad faith penalties under § 102.18(1)(bp). The ALJ specifically found that Shelby and A.T. Polishing were not required to make payments pending appeal under § 102.23(5). Finally, the ALJ's order denied jurisdiction for Bosco to

---

[6] Wisconsin Stat. § 102.18(1)(bp) provides:

The department may include a penalty in an award to an employee if it determines that the employer's or insurance carrier's suspension of, termination of or failure to make payments or failure to report injury resulted from malice or bad faith. This penalty is the exclusive remedy against an employer or insurance carrier for malice or bad faith. The department may award an amount which it considers just, not to exceed the lesser of 200% of total compensation due or $15,000. The department may assess the penalty against the employer, the insurance carrier or both. Neither the employer nor the insurance carrier is liable to reimburse the other for the penalty amount. The department may, by rule, define actions which demonstrate malice or bad faith.

[7] Wisconsin Admin. Code § DWD 80.70(2) states:

An insurance company or self-insured employer who, without credible evidence which demonstrates that the claim for the payments is fairly debatable, unreasonably fails to make payment of compensation or reasonable and necessary medical expenses, or after having commenced those payments, unreasonably suspends or terminates them, shall be deemed to have acted with malice or in bad faith.

litigate a claim under Wis. Stat. § 102.22(1) for inexcusable delay, as this claim was not pled in the hearing application.

¶ 11. Bosco appealed to LIRC, which, by order dated June 28, 2002, affirmed the order of the ALJ. Unlike the ALJ, LIRC did not provide a definitive interpretation of § 102.23(5). Rather, LIRC determined that the statute was susceptible to more than one reasonable meaning such that it was fairly debatable whether Shelby was required to make payments under § 102.23(5). Thus, LIRC ruled: "The commission cannot conclude that Shelby Mutual's reading of Wis. Stat. § 102.23(5) is unreasonable or 'lacked a reasonable basis.'" Thereafter, on July 3, 2002, Bosco filed a complaint in Kenosha County Circuit Court seeking review of LIRC's decision.

¶ 12. On December 30, 2002, the circuit court, Judge Schroeder presiding, reversed the decision of LIRC and remanded for further proceedings on Bosco's bad faith claim. The circuit court ruled that LIRC erred in its interpretation of § 102.23(5). The court reasoned:

> The decision of this court in the prior action between the parties contained, on its third page, the explicit finding: "the . . . employer's liability is not questioned." In the subsequent appeal, in which this court's decision was affirmed by the court of appeals and a petition for review denied by the supreme court, no issue was taken with that finding. It was therefore clear that the plaintiff was entitled to the payment of benefits from A.T. Polishing. The appeal concerned the date of the injury, and was an effort by Shelby to force another insurer to bear the cost. The plaintiff's substantial rights, and those of A.T. Polishing, were fixed, regardless of the outcome of the appeal, with only the final sum and obligated insurer potentially subject to adjustment after the appeal, a situation identical to that contemplated by the statute.

598

In reversing LIRC's decision, the circuit court noted that the entire appeal on the merits was "a tardily-conceived effort by Shelby to *escape* liability on the claim[.]" Because the original appeal was merely a coverage dispute, the circuit court ruled that "[n]either Shelby, nor A.T. Polishing, was relieved of the obligation to make the required payments."

¶ 13. Shelby then appealed to the court of appeals. The court of appeals affirmed the circuit court and remanded to LIRC to consider whether A.T. Polishing, Shelby, or both were liable for bad faith penalties under the proper interpretation of § 102.23(5). *Bosco,* 267 Wis. 2d 293, ¶ 36. The court of appeals concluded that § 102.23(5) is plain and unambiguous: "The intent of [the statutory] language is unequivocal: an employer *must* make payment of benefits during judicial review when the only question is who will pay the benefits." *Id.,* ¶ 32 (emphasis in original). The court reasoned that "[a]n interpretation of Wis. Stat. § 102.23(5) that would permit an employer or insurer to impugn liability on a phantom insurance company would be tantamount to permitting employers and insurers to engage in mischief and to avoid paying benefits that they concede are due to the injured employee." *Id.,* ¶ 33.

## II. ISSUES

¶ 14. The present appeal involves two related issues: 1) whether § 102.23(5) unambiguously requires an employer[8] to pay benefits to an employee upon commencement of an action for judicial review of

---

[8] We recognize that because the Worker's Compensation Act requires almost all employers to carry insurance to cover all liabilities under the Act, *see* Wis. Stat. §§ 102.28(2) &

LIRC's award when only the date of injury is challenged on appeal, but it is conceded that the employee suffered permanent total disability that was caused by his employment with the employer, such that failure to make payment pending appeal could not be based on a reasonable interpretation of § 102.23(5); and 2) whether an insured employer is subject to bad faith penalties under § 102.18(1)(bp), separate from its insurer, for failure to comply with § 102.23(5). We answer both questions in the affirmative.

¶ 15. We conclude that § 102.23(5) unambiguously requires an employer to make payment to a disabled employee pending appeal of a date of injury defense in an occupational disease case when the employer's liability is not disputed on appeal and the only question is who will pay benefits. Therefore, we hold that Shelby's interpretation of § 102.23(5) is not reasonable or fairly debatable as a matter of law because Shelby's original appeal did not contest A.T. Polishing's liability and involved only the question of

---

102.31(1)(b), it is most likely that an insurer would pay benefits under § 102.23(5) when its insured becomes obligated to do so, either by indemnifying the employer or paying benefits directly on its behalf. The terms of the insurance policy will govern whether the employer will make payments directly or through its insurer. Wis. Stat. § 102.30(5). Also, we note:

> In a typical tripartite insurance relationship involving an insurer, the insured, and the insurance defense attorney, the insurer has a duty to retain and pay for an attorney to represent the policyholder/insured when the insured is sued by a third party. As such, the insurer maintains the right to control the defense, the settlement of a claim, and the payment of a claim within policy limits.

*Marten Transp., Ltd. v. Hartford Specialty Co.*, 194 Wis. 2d 1, 18, 533 N.W.2d 452 (1995)(internal citation omitted).

whether Shelby was liable to pay benefits. Further, because § 102.18(1)(bp) specifically allows for the imposition of bad faith penalties on an employer for failure to pay benefits and because § 102.23(5) specifically directs the employer to pay benefits pending an appeal when the only issue is who will pay benefits, we hold that an employer may be subject to bad faith penalties under § 102.18(1)(bp), independent from its insurer, when it fails to pay benefits in accordance with § 102.23(5).

## III. STANDARDS OF REVIEW

¶ 16. When reviewing an appeal from a circuit court in an administrative review proceeding, this court reviews the decision of the agency, not that of the circuit court or ALJ. *See Motola v. LIRC*, 219 Wis. 2d 588, 597, 580 N.W.2d 297 (1998); *Lopez v. LIRC*, 2002 WI App 63, ¶ 9, 252 Wis. 2d 476, 642 N.W.2d 561.

¶ 17. Section 102.18(1)(bp) provides, in relevant part, that the Department of Workforce Development (DWD) may include a penalty in an award to an employee if the department determines that "the employer's or insurance carrier's . . . failure to make payments . . . resulted from malice or bad faith." Wis. Stat. § 102.18(1)(bp). A claimant seeking to impose penalties for bad faith failure to make payments under § 102.18(1)(bp) must prove two elements: 1) the employer or insurer did not have a reasonable basis for denying benefits; and 2) the employer or insurer knew it lacked a reasonable basis for denying benefits or recklessly disregarded a lack of a reasonable basis for denying payment. *See Brown v. LIRC*, 2003 WI 142, ¶¶ 24–26, 267 Wis. 2d 31, 671 N.W.2d 279.

¶ 18. A determination of bad faith under § 102.18(1)(bp) presents a mixed question of fact and law. *Id.,* ¶ 10. The historical conduct of a party constitutes an issue of fact, and we will sustain LIRC's factual determinations if they are supported by credible and substantial evidence. *Id.* Here, the facts are undisputed: Following LIRC's decision affirming the award of the ALJ, Bosco demanded payment of benefits under § 102.23(5). Shelby, based on its interpretation of § 102.23(5), refused and did not begin to make payments until this court denied its petition for review.

¶ 19. Whether a party's conduct rises to the level of bad faith under § 102.18(1)(bp) is a question of law. *Brown,* 267 Wis. 2d 31, ¶ 11. LIRC concluded that Shelby did not engage in bad faith because Shelby's interpretation of § 102.23(5) was not unreasonable and therefore it was fairly debatable whether § 102.23(5) required Shelby to make disability payments to Bosco during the original appeal. In *Brown,* we determined that LIRC's conclusion concerning whether a party's conduct constitutes bad faith is entitled to great weight deference. *Id.,* ¶ 17. However, even under the great weight standard, we will not uphold an agency's interpretation of a statute if it is contrary to the clear meaning of a statute. *Beverly Enters., Inc. v. LIRC,* 2002 WI App 23, ¶ 18, 250 Wis. 2d 246, 640 N.W.2d 518.

¶ 20. In addition, unlike *Brown,* LIRC's bad faith determination in the present case did not involve any value or policy choices based on the party's conduct; rather, LIRC based its conclusion regarding bad faith solely on its interpretation of ˙§ 102.23(5), a statute which it admitted it had no previous experience inter-

preting. In fact, there is no reported case interpreting § 102.23(5). Further, LIRC did not actually render a definitive interpretation of § 102.23(5); it merely determined that § 102.23(5) was susceptible to more than one reasonable interpretation and that Shelby's interpretation of § 102.23(5)—that payment is not required pending appeal of the date of injury unless two or more insurers are part of the proceeding—was not unreasonable. Generally, "[n]o deference is due an agency's conclusion of law when an issue before the agency is one of first impression or when an agency's position on an issue provides no real guidance." *Brown,* 267 Wis. 2d 31, ¶ 14.

■

¶ 21. We determine that LIRC's conclusion that Shelby did not engage in bad faith for failing to make payments pending appeal under § 102.23(5) is entitled to no deference because LIRC based its bad faith conclusion solely on an interpretation of a statute with which it has no prior experience interpreting, its interpretation in this case will provide no guidance to future litigants, and because we ultimately conclude that LIRC's interpretation of § 102.23(5) is contrary to the plain meaning of the statute.

¶ 22. Therefore, we examine de novo whether § 102.23(5) unambiguously required A.T. Polishing to make payments to Bosco pending the appeal on the merits of this case such that Shelby or A.T. Polishing did not have a reasonable basis for denying benefits. In addition, the second issue—whether an insured employer is subject to bad faith penalties under § 102.18(1)(bp), separate from its insurer, for failure to comply with § 102.23(5)—was not addressed by LIRC. Rather, the second issue was first raised by the parties at the court of appeals in response to the circuit court's

statement that "[n]either Shelby, nor A.T. Polishing, was relieved of the obligation to make the required payment." Thus, we review de novo whether § 102.18(1)(bp) permits the imposition of bad faith penalties upon an insured employer, separate from its insurer, for failure to comply with § 102.23(5).

¶ 23. Both issues before us require the application of statutory language to a set of facts. When interpreting statutes, our goal is to give effect to the language in the statute. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 43, 271 Wis. 2d 633, 681 N.W.2d 110. We begin by looking to the language of the statute because we "assume that the legislature's intent is expressed in the statutory language." *Id.,* ¶ 44. Technical terms or legal terms of art appearing in the statute are given their accepted technical or legal definitions while nontechnical words and phrases are given their common, everyday meaning. Wis. Stat. § 990.01(1). Terms that are specifically defined in a statute are accorded the definition the legislature has provided. *Wis. Citizens Concerned for Cranes and Doves v. DNR,* 2004 WI 40, ¶ 6, 270 Wis. 2d 318, 677 N.W.2d 612. In addition, we read the language of a specific statutory section in the context of the entire statute. *Id.* Thus, we interpret a statute in light of its textually manifest scope, context, and purpose. *Kalal,* 271 Wis. 2d 633, ¶ 48 & n.8.

¶ 24. " 'If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity and the statute is applied according to this ascertainment of its meaning.' " *Wis. Citizens Concerned for Cranes and Doves,* 270 Wis. 2d 318, ¶ 6 (quoting *Bruno v. Milwaukee County,* 2003 WI 28, ¶ 20, 260 Wis. 2d 633, 660

N.W.2d 656). If the statute is unambiguous, there is no need to resort to extrinsic sources such as legislative history; we simply apply the language of an unambiguous statute to the facts before us. *Id.* A statute is not ambiguous merely because the parties disagree as to its meaning or because different courts have reached different conclusions. *Id.,* ¶ 7. A statute is ambiguous if it is "readily susceptible to two or more meanings by reasonably well-informed individuals." *Id.* (citing *Lincoln Sav. Bank v. DOR,* 215 Wis. 2d 430, 441–42, 573 N.W.2d 522 (1998)).

## IV. ANALYSIS

### A. Wisconsin Stat. § 102.23(5)

¶ 25. Wisconsin Stat. § 102.23(5) provides: "The commencement of action for review shall not relieve the employer from paying compensation as directed, when such action involves only the question of liability as between the employer and one or more insurance companies or as between several insurance companies." The heart of this dispute is whether by contesting Bosco's date of injury on the appeal on the merits, Shelby was appealing "only the question of liability as between the employer and one or more insurance companies or as between several insurance companies," Wis. Stat. § 102.23(5), or whether Shelby was contesting the ultimate liability of A.T. Polishing.

¶ 26. Shelby argues that § 102.23(5) applies only to cases where liability for a specific date of injury is undisputed and the only issue on appeal is whether the employer had insurance coverage for that date or which insurance company was on the risk for that particular date. According to Shelby, the statute does not apply where the issue on appeal is when the employee became

disabled. Shelby asserts that under Wis. Stat. § 102.03, liability in worker's compensation cases attaches only to a specific date of injury. Therefore, Shelby contends that by challenging the 1996 date of injury on its original appeal, it was challenging the ultimate liability of A.T. Polishing and was not simply contesting coverage. As Shelby explains, the issue on the original appeal was whether A.T. Polishing was liable for a 1996 date of injury. Shelby argues that had it been successful in arguing that the date of injury was 1993, A.T. Polishing would not have automatically been liable for a 1993 date of injury; rather, according to Shelby, Bosco would have to file another Application for Hearing asserting a 1993 date of injury, join the appropriate insurer, and prove A.T. Polishing was liable for a 1993 date of injury.

¶ 27. At oral argument, Shelby clarified that while it conceded Bosco suffered a permanent total disability and while it conceded the permanent total disability was caused by occupational exposure at A.T. Polishing, it never conceded that A.T. Polishing was liable for a 1996 date of injury. Shelby asserts that A.T. Polishing's liability was not fixed simply because it conceded a permanent total disability that was caused by occupational exposure as liability must be linked to a specific date of injury in order for an employer to be held liable for that injury.

¶ 28. Finally, Shelby asserts that a challenge to the date of injury is only a challenge to coverage if there are several insurers joined in the action who were on the risk at different dates. However, where there is only one insurer joined in the action, a challenge to the date of injury contests the ultimate liability of both the employer and insurer. Shelby notes that while it attempted to implead another insurer who was on the risk in 1993, the ALJ prevented it from doing so.

¶ 29. Bosco, on the other hand, asserts that Shelby's entire appeal was a last minute attempt to avoid its responsibility and force coverage on another insurer who was on the risk in 1993. Bosco notes that in its answer, Shelby conceded Bosco's occupational exposure occurred around the time alleged and contested only causation. In addition, Bosco states that by the time of the administrative hearing, Shelby conceded Bosco's injuries were caused by occupational exposure at A.T. Polishing. Bosco notes that the ALJ stated that Shelby was merely trying to bring in another insurer to "help carry the load." Bosco argues that because Shelby contested only the date of injury and conceded that Bosco was permanently totally disabled due to occupational exposure at A.T. Polishing, the only question on appeal was whether Shelby was liable for paying benefits or whether the insurer on the risk in 1993 would pay benefits. According to Bosco, A.T. Polishing's liability became fixed once Shelby conceded that Bosco was permanently totally disabled due to occupational exposure at A.T. Polishing.

¶ 30. Bosco contends that A.T. Polishing would still be liable if Shelby had been successful in arguing that the date of injury was 1993. Bosco notes that the only practical difference had Shelby been successful would have been that the rate of disability payments would have been different and the checks would have been coming from a different insurer. Thus, according to Bosco, the date of injury bears only on the question of which insurer is liable for disability payments.

¶ 31. Finally, Bosco argues that Shelby's interpretation of § 102.23(5) runs contrary to the purpose of the Worker's Compensation Act, which is to provide prompt payment to injured employees. According to Bosco, Shelby's interpretation would force injured employees

entitled to benefits to wait until all issues between insurers are resolved when it is undisputed that the employer is liable for the payments.

¶ 32. In the original appeal, Shelby contended that November 1996 was not the correct date of injury and, as a matter of law, the proper date of injury was sometime in 1993. It is undisputed that Bosco was employed by A.T. Polishing from 1987 until 1996. At oral argument, Shelby clarified that it has never claimed that Bosco's work-related injury was caused by exposure at another employer. Therefore, we need not address whether a challenge to the date of injury in an occupational disease case is *always* a challenge to the employer's liability. Rather, the narrow question we address is whether a date of injury defense constitutes a challenge to the employer's liability where it is conceded that the employee suffered permanent total disability that was caused by his occupational exposure with the employer and where the employee was continuously employed with the defendant employer at the time of the alleged alternative date of injury.

¶ 33. Shelby's primary argument is that by contesting the date of injury it was contesting A.T. Polishing's ultimate liability because liability for worker's compensation is dependent upon the date of injury under Wis. Stat. § 102.03. Section 102.03 provides, in pertinent part:

> (1) Liability under this chapter shall exist against an employer only where the following conditions concur:
>
> (a) Where the employee sustains an injury.
>
> (b) Where, at the time of the injury, both the employer and employee are subject to the provisions of this chapter.

608

(c)1. Where, at the time of the injury, the employee is performing service growing out of an incidental to his or her employment.

. . . .

(d) Where the injury is not intentionally self-inflicted.

(e) Where the accident or disease causing injury arises out of the employee's employment.

. . . .

(4) The right to compensation and the amount of the compensation shall in all cases be determined in accordance with the provisions of law in effect as of the date of the injury except as to employees whose rate of compensation is changed . . . .

¶ 34. We agree with Bosco that Shelby's initial appeal concerned only the issue of who would pay benefits and A.T. Polishing's liability was not in dispute. First, even if Shelby had been successful in arguing that the correct date of injury was 1993, A.T. Polishing would still have met all of the statutory prerequisites to liability under § 102.03 so that a finding of a 1993 date of injury would have had no practical effect in regard to A.T. Polishing's liability. As one commentator has noted, "[t]he date of disability [for occupational disease] is important because it determines which provisions of law (including the maximum limitations on wages and benefits) govern the claim, and which employer or insurer is liable." John D. Neal & Joseph Danas, Jr., *Worker's Compensation Handbook* § 3.4 (5th ed. 2003). Under § 102.03, the date of injury is relevant to liability in three circumstances: 1) at the time of the injury both the employee and employer must be subject to

609

Wisconsin's Worker's Compensation Act, § 102.03(1)(b); 2) at the time of the injury, the employee must be performing services growing out of or incidental to his employment, § 102.03(1)(c)1.; and 3) the right to compensation and the amount is determined by the law in effect at the time of injury except for changes in the rate of compensation. Wis. Stat. § 102.03(4).

¶ 35. There is no dispute that in 1993 both Bosco and A.T. Polishing were subject to the Worker's Compensation Act. Likewise, because it is undisputed that Bosco was employed at A.T. Polishing in 1993, there can be no dispute that in 1993 Bosco was performing services related to his employment when his injury allegedly occurred. Also, there has been no allegation that the substantive law governing A.T. Polishing's liability was different in 1993 than it was in 1996. Moreover, Shelby did not allege that Bosco's injury was self-inflicted and it conceded that Bosco's condition was caused by occupational exposure at A.T. Polishing. In other words, it conceded that Bosco's disease arose "out of the employee's employment." Wis. Stat. § 102.03(1)(e). Shelby challenged only the legal conclusion that the date of disability was Bosco's last day of work. Therefore, even if Shelby had been successful in arguing that the correct date of injury was 1993, all of the prerequisites for liability contained in § 102.03(1) would have been met. Had Bosco been employed with a different employer in 1993, a date of injury defense would have implicated A.T. Polishing's liability; however, it is undisputed that Bosco was continuously employed with A.T. Polishing from 1993 until 1996.

¶ 36. Second, while Shelby asserts a new hearing would have been required to hold the 1993 insurer liable had Shelby been successful in its date of injury defense, this argument misses the point. Regardless of

whether a new hearing would have been required in order to hold the 1993 insurer liable, a new hearing would not have affected the liability of A.T. Polishing. This court has twice recognized that a challenge to the date of injury when the employee has been continuously employed with the same employer does not affect that employer's liability, but is relevant only to the issue of which insurance carrier is responsible for making payments.

¶ 37. In *Maryland Casualty Co. v. Industrial Commission,* 230 Wis. 363, 284 N.W. 36 (1939), an employee filed for worker's compensation benefits alleging a date of injury in 1933; the insurance carrier as of the alleged date of injury, Employers Mutual, was made a party to the proceeding. *Id.* at 364. At the hearing, it was determined that the correct date of injury was in 1932. The Commission awarded benefits, which Employers Mutual initially paid. *Id.* at 364–65. However, Employers Mutual later discovered that it was not on the risk in 1932 and petitioned for a new hearing. At the hearing, Maryland Casualty, the insurer on the risk in 1932, contended that the Commission was without jurisdiction because it was not properly made a party. *Id.* at 366–67. While additional evidence was taken at the second hearing, Maryland Casualty declined to request a de novo hearing on all the issues, instead claiming it could not be made a party to the proceeding. *Id.* at 367. After the hearing was concluded, the Commission again awarded benefits and ordered that Maryland Casualty was liable for payments from the time Employers Mutual stopped paying. *Id.* at 368.

¶ 38. On appeal to the Wisconsin Supreme Court, Maryland Casualty argued, inter alia, that it was not liable to pay benefits because it did not have timely notice of the claim. *Id.* at 371. The court, in ruling that

the relevant statute required notice only to the employer, stated: "the employer being bound, its insurer was bound with it. *That the employer was bound was determined in the former proceeding. . . . The liability of the employer, Douglass county, was fixed by the first proceeding.*" *Id.* at 371–72 (emphasis added).

¶ 39. In *Miller Brewing Co. v. LIRC,* 173 Wis. 2d 700, 495 N.W.2d 660 (1993), we again recognized that where an employee is continuously employed with the same employer, a date of injury defense affects only the liability of the various insurers and does not affect the employee's rights vis-à-vis its employer. In *Miller Brewing,* the employee filed a claim for worker's compensation, alleging that the harassment of his co-workers aggravated his post-traumatic stress disorder. *Id.* at 708. DIHLR awarded benefits, concluding that the employee's date of injury was the last day the employee worked for Miller Brewing, rather than the date when his first harassment-related absence occurred. *Id.* at 709. During the relevant time period, Miller Brewing had two insurers: National Union Insurance (National Union) was on the risk when the employee's absences first occurred, and Twin City Insurance (Twin City) was the insurer during the period when the employee ended his employment at Miller Brewing. *Id.* After determining the date of injury, DIHLR dismissed National Union. *Id.* LIRC subsequently affirmed DIHLR's conclusion that the employee had suffered a compensable occupational disease as a result of his employment, but determined that the correct date of injury was the first date of the employee's wage loss; therefore, LIRC determined that National Union was liable for payment and it dismissed Twin City. *Id.*

¶ 40. Miller Brewing and National Union filed an action for judicial review, naming only LIRC and the employee as defendants. *Id.* On appeal before this court, the sole issue was whether, under Wis. Stat. § 102.23(1)(a) (1989–90), Twin City was an "adverse party" such that it was required to be made a party to the appeal. *Id.* at 711. The linchpin of National Union's argument was that it and Twin City were united in interest because neither had asserted a date of injury defense; rather, both had asserted that the employee's injury was not caused by his employment. *Id.* at 718. This court, in concluding that the action was properly dismissed for failure to join an adverse party stated: "We conclude that in this case the respective liability of the two insurance companies depends upon the determination of the date of injury." *Id.* at 722. In addition, we noted that the question of which insurance company was liable did not affect the employee's right to recover from the employer. *Id.* at 721. Thus, our case law establishes that a challenge to the date of injury when the employee has been continuously employed with the same employer does not affect the employer's liability, but is relevant only to the issue of which insurance carrier is responsible for making payments because the employer's liability was established at the first hearing.

¶ 41. Finally, the position Shelby took during the original appeal completely belies its current position that the appeal was not merely an attempt to shift liability to another insurer. In his Application for Hearing, Bosco listed the date of injury as July 22, 1996. In its answer, Shelby admitted that "[t]he accident or occupational exposure alleged in the application actu-

613

ally occurred on or about the time claimed."[9] The first time Shelby asserted its date of injury defense was the day of the original administrative hearing. At the hearing, the ALJ noted that Shelby was "willing to concede that an occupational illness exists, though it's not entirely sure that it's the right insurance company." The ALJ stated that the sole issue was whether A.T. Polishing and Shelby would "have to pay on a 1996 total perm claim, whether it's total or some other lesser amount as far as the extent of disability." When asked if he wanted to comment further on the issues, Shelby's counsel stated: "No, Your Honor, I think you had it right." The ALJ's decision stated:

> [The claim] alleges an occupational asthma work injury with a last day of work of November 5, 1996. The claim is for total disability and past and future treatment expenses.
>
> *The carrier now accepts that the applicant did sustain this work injury,* but has not paid benefits to date. It contends that permanent injury should be 15 percent, rather than 100 percent.

(Emphasis added.)

¶ 42. Perhaps most damaging for Shelby are the statements contained in its brief to the circuit court, appealing the initial decision of LIRC. Shelby argued:

> If a single employer has had successive insurers,

---

[9] Shelby claims that simply admitting that the exposure occurred during the time alleged does not mean that it conceded Bosco's injury occurred during this time. However, Shelby eventually conceded that Bosco's permanent total disability was caused by the occupational exposure at A.T. Polishing. It seems perplexing to argue that the exposure causing Bosco's injury occurred sometime in 1996 but his injury occurred earlier in 1993.

liability is imposed upon the insurer whose policy was in force at the time the disability occurred. The factual record establishes without doubt that the applicant's lung disability began in 1993, before Shelby Insurance Company came on the risk for A T Polishing Company.

Resp't Br. at 107 (citations omitted). Further, Shelby asserted:

The statute provides for recovery of occupational disease benefits against the carrier on the risk as of the date of injury. If the correct date of injury is shown to be in 1993 and not in 1996, the applicant must proceed against the carrier on the risk in 1993. The commission lacks statutory authority to order recovery of benefits against an insurance carrier whose policy was not in effect as of the date of injury. . . .

*The commission has erred in its conclusion of law that Shelby Insurance Company is responsible for occupational disease benefits based on a date of injury of November 5, 1996.*

*Id.* at 110–11 (emphasis added).[10]

¶ 43. Indeed, in the circuit court's original decision, it specifically stated, "the plaintiff employer's liability is not questioned." The circuit court, when considering the present bad faith appeal, emphasized that no issue was taken with this factual finding during the original appeal, noting that the original appeal was

---

[10] In addition, the record contains an activity log report from Shelby concerning A.T. Polishing. An entry dated February 4, 1998, signed by one Ronald Aldridge, discussing Bosco's claim against A.T. Polishing, evidences that Shelby's entire strategy all along was to absolve itself from liability. The entry states: "If Dr. Levy gives us a favorable opinion on this case stating no change since '93 or early '94 prior to Shelby Ins. involvement, we will not pay a dime on it."

"a coverage issue, and camouflaging it as a dispute over the date of the loss does not alter that fact."

██

¶ 44. We conclude, based on § 102.03, *Maryland Casualty, Miller Brewing,* and the record before us that A.T. Polishing's liability was fixed at the first proceeding and the initial appeal concerned only the question of whether Shelby was liable to pay benefits. Because Shelby conceded that Bosco's permanent total disability was caused by occupational exposure during his employment at A.T. Polishing and Bosco was continuously employed at A.T. Polishing from 1993 until 1996, Shelby's initial challenge to the date of Bosco's injury was not a challenge to the liability of A.T. Polishing. Rather, by alleging that the correct date of injury was 1993, Shelby was challenging only its liability and attempting to place liability on the 1993 insurance carrier.

¶ 45. The unambiguous language in § 102.23(5) requires payment to the injured employee pending appeal of LIRC's decision "when such action involves only the question of liability as between the employer and one or more insurance companies or as between several insurance companies." Wis. Stat. § 102.23(5). We agree with the court of appeals that this language is unequivocal: "an *employer must* make payment of benefits during judicial review when the only question is who will pay the benefits." *Bosco,* 267 Wis. 2d 293, ¶ 32 (emphasis in original). The facts of this case fall squarely within the statutory language.

¶ 46. As demonstrated above, A.T. Polishing's liability was fixed at the first proceeding. Because Shelby had conceded that Bosco was permanently totally disabled due to occupational exposure at A.T. Polishing, the employer's liability was not in question; indeed,

under this set of facts it was the only employer that could have been liable. A successful challenge would not have affected Bosco's rights vis-à–vis A.T. Polishing, except perhaps by changing the rate of disability. The record is clear that the original appeal in this case involved only the question of *Shelby's* liability, not that of A.T. Polishing. Under these facts, the date of injury was relevant only to whether Shelby was liable or whether A.T. Polishing would be required to seek payment from its 1993 insurer. Because the original appeal involved only the issue of who was liable for benefits, the issue concerned only "liability as between the employer and one or more insurance companies or as between several insurance companies." Wis. Stat. § 102.23(5). Thus, the plain language of § 102.23(5) required A.T. Polishing to make payments to Bosco during appeal, either directly or through its insurer.

¶ 47. We find no support for Shelby's position that § 102.23(5) applies only where two or more insurers are parties to the original hearing. First, the text of the statute does not require that two insurance companies must be joined in the action in order for its provisions to apply. To permit an insurer to shirk its statutory obligations to make payment pending appeal when it contends that another carrier is liable simply because the other insurer is not a party to the action would contravene the statutory language.

¶ 48. Moreover, Shelby's position defeats the textually manifest purpose of the Worker's Compensation Act. As has long been recognized by courts in this state, the purpose of the Worker's Compensation Act "is to give prompt relief to injured employees who are entitled to compensation." *Schneider Fuel & Supply Co. v.*

617

*Indus. Comm'n,* 224 Wis. 298, 301, 272 N.W. 25 (1937).[11] Because the purpose of the Act is to "provide prompt justice for injured workers and to prevent, as far as possible, the delays that might arise from protracted litigation[,] [t]he proceedings should be as simple and as speedy as possible." *Employers Health Ins. Co. v. Tesmer,* 161 Wis. 2d 733, 738, 469 N.W.2d 203 (Ct. App. 1991)(citations omitted). This purpose is reflected in the express language of § 102.23(5), which requires payment to the employee during appeal if the employer's liability for such payments has been established and is not challenged on appeal. The statutory language demonstrates that the arrangements between the employer and its insurer are irrelevant from the perspective of the employee, once it is established that the employer is liable to make benefit payments. Thus, § 102.23(5) requires prompt payment to the insured when the only issues on appeal are collateral issues regarding the indemnification of the employer. Had Shelby been successful on appeal and another hearing been required to hold the 1993 insurer responsible, this run-of-the-mill case would have been saddled with another entire layer of litigation and would have delayed payment to Bosco even longer, even though the liability of A.T. Polishing for those payments was fixed at the first proceeding.

¶ 49. In addition, we note the original appeal in this case resulted from Shelby's failure to amend its pleading or timely request a continuance in order to bring in the 1993 insurer. At oral argument, Shelby

---

[11] *See also McDonough v. DWD,* 227 Wis. 2d 271, 280, 595 N.W.2d 686 (1999); *Chappy v. LIRC,* 128 Wis. 2d 318, 329–30, 381 N.W.2d 552 (Ct. App. 1985).

conceded that payment would have been required under § 102.23(5) had it been successful in bringing another insurer into the action. Were we to hold that payment pending appeal is not required under § 102.23(5) when the only question on appeal is which insurer will have to pay, simply because one insurer failed to successfully bring the other into the proceeding, we would be rendering the operation of § 102.23(5) dependent upon parties' pleading choices. The language of § 102.23(5) does not provide that its requirements are contingent upon there being another insurer joined in the action. We decline to accept Shelby's invitation to read limiting language into § 102.23(5).

¶ 50. Therefore, we conclude that § 102.23(5) unambiguously requires an employer to make payment to a disabled employee pending appeal of a date of injury defense in an occupational disease case when the employer's liability is not disputed on appeal and the only question is who will pay benefits. Because A.T. Polishing's liability was not contested on appeal, and the only issue on appeal was who would pay benefits, under the plain language of § 102.23(5), A.T. Polishing should have paid compensation to Bosco.[12]

---

[12] Because § 102.23(5) unambiguously required A.T. Polishing to make payments to Bosco on appeal and Shelby was in control of A.T. Polishing's defense, it had a duty to either make payment on A.T. Polishing's behalf, if its policy so provided, or, if not, to instruct A.T. Polishing that it (A.T. Polishing) was required to make payments less it be subject to bad faith penalties.

"*When, as here, the insurer undertakes and controls the defense of a claim against its insured,* it has a duty not only to protect itself to the extent of its liability but it must act in good

¶ 51. The statutory scheme is clear that when there is only a dispute concerning who pays benefits on appeal, the employer, directly or through its insurer, is required to promptly pay the compensation award to the employee and any issues concerning reimbursement can be litigated after the appeal. *See* Wis. Stat. § 102.18(1)(bw).[13] If it was ultimately determined that the correct date of injury was in fact 1993, Shelby could have petitioned for reimbursement under § 102.18(1)(bw). The circuit court noted that such adjustments are an everyday part of worker's compensation practice. In fact, this is precisely what occurred in *Maryland Casualty*, 230 Wis. at 364–68: the insurer that was originally found to be liable paid compensation, later determined that it was not the insurer on the risk at the date of injury, and filed a new Application for Hearing, seeking reimbursement from the insurer who was on the risk at the date of injury.

¶ 52. We emphasize that we do not hold that the failure to comply with the dictates of § 102.23(5) in this instance constitutes bad faith. Rather, like the court of

---

faith to protect the interest of its insured. If it fails to do so it is liable to its insured for the amount the insured required over and above the policy limits."

*Mowry v. Badger State Mut. Cas. Co.*, 129 Wis. 2d 496, 534, 385 N.W.2d 171 (1986)(quoting *Howard v. State Farm Mut. Auto. Ins. Co.*, 60 Wis. 2d 224, 227, 208 N.W.2d 442 (1973)(emphasis in original)).

[13] Wisconsin Stat. § 102.18(1)(bw) provides:

If an insurer, a self-insured employer or, if applicable, the uninsured employers fund pays compensation to an employee in excess of its liability and another insurer is liable for all or part of the excess payment, the department may order the insurer or self-insured employer that is liable to reimburse the insurer or self-insured employer that made the excess payment or, if applicable, the uninsured employers fund.

appeals, we merely hold that Shelby's interpretation of § 102.23(5) is not reasonable or fairly debatable as a matter of law because Shelby's original appeal did not contest A.T. Polishing's liability and involved only the question of whether Shelby was liable to pay benefits. In other words, it was not fairly debatable that A.T. Polishing, either directly or through Shelby, was required to make payments under § 102.23(5). On remand, LIRC will be able to consider all of the relevant factors that go into a bad faith determination. However, LIRC cannot use Shelby's interpretation of § 102.23(5) to conclude that there was a reasonable basis for denying benefits.

B. Wisconsin Stat. § 102.18(1)(bp)

¶ 53. The next issue we address is whether an insured employer is subject to bad faith penalties under § 102.18(1)(bp), separate from its insurer, for failure to comply with § 102.23(5). In other words, we must determine whether A.T. Polishing may be separately subject to bad faith penalties under § 102.18(1)(bp) for failing to make payments during the original appeal.

¶ 54.. Shelby argues that an insured employer cannot be held separately liable for failure to make benefit payments because an insured employer is under no independent obligation to make benefit payments. According to Shelby, only self-insured employers are required to make benefit payments and therefore, only self-insured employers may be held liable for bad faith failure to make benefit payments. Shelby argues that an employee may not demand payment directly from an employer. Shelby asserts that Wis. Stat. § 102.30(4) is

inapplicable because its only purpose is to make worker's compensation benefits primary regardless of other insurance.

¶ 55. In contrast, Bosco notes that § 102.23(5) mandates that the *employer* pay benefits pending judicial appeal. Further, according to Bosco, § 102.30(4) explicitly permits an employee to recover compensation directly from an employer. Moreover, Bosco asserts that § 102.18(1)(bp) specifically authorizes LIRC to assess penalties against either the insurer or employer, or both.

¶ 56. Section 102.18(1)(bp), the provision governing the imposition of bad faith penalties, provides, in pertinent part:

> The department may include a penalty in an award to an employee if it determines that the employer's or insurance carrier's . . . failure to make payments . . . resulted from malice or bad faith. . . . *The department may assess the penalty against the employer, the insurance carrier or both.*

Wis. Stat. § 102.18(1)(bp) (emphasis added). The language of this statute supports Bosco's position because it specifically permits the department to assess penalties against either the insurer or employer. However, the last sentence of § 102.18(1)(bp) states that "[t]he department may, by rule, define actions which demonstrate malice or bad faith." In fact, the department has done so in Wis. Admin Code § DWD 80.70. This section provides:

> (1) An employer who unreasonably refuses or unreasonably fails to report an alleged injury to its insurance company providing worker's compensation coverage, shall be deemed to have acted with malice or bad faith.

622

(2) An insurance company or self-insured employer who, without credible evidence which demonstrates that the claim for the payments is fairly debatable, unreasonably fails to make payment of compensation or reasonable and necessary medical expenses, or after having commenced those payments, unreasonably suspends or terminates them, shall be deemed to have acted with malice or in bad faith.

Wis. Admin Code § DWD 80.70. This administrative code provision supports Shelby's position because it deems employers to have acted in bad faith only when they fail to report an injury or claim to their insurer and deems only insurers and *self-insured employers* to have acted in bad faith for failure to make benefit payments.

¶ 57. Indeed, the secondary authorities also support this position. In discussing the imposition of bad faith penalties, one authority notes:

> The test to determine if *an employer's failure or refusal to report an injury is malicious or in bad faith* is whether the failure or refusal is "unreasonable." As to *failure to pay indemnity or medical expenses, the test is whether the insurer or self-insured employer* has "credible evidence" that demonstrates that the claim is "fairly debatable."

John D. Neal & Joseph Danas, Jr., *Worker's Compensation Handbook* § 7.22 (5th ed. 2003) (emphasis added) (internal citations omitted).[14]

¶ 58. However, we do not believe that Wis. Admin. Code § DWD 80.70 is dispositive of the question before us. First, Wis. Admin. Code § DWD 80.70 merely *deems*

---

[14] *See also* Charles B. Palmer, *Wisconsin Worker's Compensation Law: A Handbook for Employers* § 8.8 (1999)(noting the same distinction between bad faith penalties for employers and self-insured employers).

that certain actions constitute bad faith or malice. It does not provide an exclusive list of what actions *may* constitute bad faith in certain circumstances. Because the present issue is one of first impression, it is not surprising that the department's rules do not cover this specific situation. Also, as noted *supra,* § 102.18(1)(bp) specifically allows for the imposition of bad faith penalties on an employer *or* insurer for failure to pay benefits. In addition, chapter 102 repeatedly utilizes the phrase "self-insured employer" when it intends to refer to these entities, but § 102.18(1)(bp) does not refer to insurers and self-insured employers, it refers to insurers and employers. Moreover, the court of appeals has previously recognized that bad faith penalties could be imposed directly on an employer for delay in making payments. *See North Am. Mech., Inc. v. LIRC,* 157 Wis. 2d 801, 810, 460 N.W.2d 835 (Ct. App. 1990).

¶ 59. Moreover, § 102.30 specifically permits an employee to recover benefits directly from an employer or insurer and provides that recovery against one shall bar recovery against the other:

> (4) *Regardless of any insurance* or other contract, an *employee or dependent entitled to compensation under this chapter may recover compensation directly from the employer* and may enforce in the person's own name, in the manner provided in this chapter, the liability of any insurance company which insured the liability for that compensation. . . .

> (5) Payment of compensation under this chapter by either the employer or the insurance company shall, to the extent thereof, bar recovery against the other of the amount so paid. As between the employer and the insurance company, payment by either the employer or

the insurance company directly to the employee or the person entitled to compensation is subject to the conditions of the policy.

Wis. Stat. § 102.30(4)&(5) (emphasis added). These two sections, when read together, recognize that an employee may recover directly from the employer, but whether the employer actually pays the money directly out of pocket, subject to indemnification by the insurer, or whether the insurer pays the money on behalf of the employer is dependent upon the specific insurance policy. Thus, in *Miller Brewing,* this court recognized that whether an employer is insured has no bearing on the ability of an injured employee's right to demand compensation from the employer: "In any event, the financial arrangements between Miller Brewing and the insurance companies do not appear to affect [the employee]. [The employee] may seek payment from either the employer or the insurance company which is determined to have insured the liability." *Miller Brewing,* 173 Wis. 2d at 721 (citing Wis. Stat. §§ 102.28(2) and 102.30(4)&(5) (1989–90)).

¶ 60. Most importantly, the specific statute at issue in this case, § 102.23(5), explicitly directs the employer to make payments to the employee pending appeal when the only issue on appeal is who is to pay benefits: "The commencement of action for review shall not relieve *the employer* from paying compensation as directed . . . ." Wis. Stat. § 102.23(5) (emphasis added). Therefore, because § 102.18(1)(bp) specifically allows for the imposition of bad faith penalties on an employer for failure to pay benefits and because § 102.23(5) specifically directs the employer to pay benefits pending an appeal when the only issue is who will pay benefits, we hold that an employer may be subject to bad faith penalties under § 102.18(1)(bp),

independent from its insurer, when it fails to pay benefits in accordance with § 102.23(5). Again, we emphasize that we do not hold that A.T. Polishing is liable for bad faith penalties for failing to comply with § 102.23(5); rather, we merely hold that it may be liable for bad faith penalties under § 102.18(1)(bp) for failing to comply with § 102.23(5) if LIRC determines that the prerequisites for a finding of bad faith are satisfied.

¶ 61. We note that almost all employers are required to carry worker's compensation insurance, Wis. Stat. § 102.28(2), and that insurance must cover all liability of the employer under Wisconsin's Worker's Compensation Act. Wis. Stat. § 102.31(1)(b). *See also State v. Koch,* 195 Wis. 2d 801, 808, 537 N.W.2d 39 (Ct. App. 1995) (worker's compensation insurance must provide coverage for all workers and for all work-related activities). Generally, an insurer maintains the right to control the defense of the insured, settle a claim on its behalf, and pay a claim within the policy limits. *Marten Transp. Ltd. v. Hartford Specialty Co.,* 194 Wis. 2d 1, 18, 533 N.W.2d 452 (1995). Thus, during the defense of a claim, the insured usually acts at the direction of its insurer. If an employee seeks compensation directly from an employer, the employer's insurance policy will govern whether the insurer indemnifies the employer or pays the sum on its behalf. Wis. Stat. § 102.30(5). When bad faith penalties are sought directly against an insured employer for acts occurring after its insurer began handling the defense of the claim, these facts should be taken into consideration in determining whether the employer had a reasonable basis for denying benefits and whether the employer

knew it lacked a reasonable basis for denying benefits or recklessly disregarded a lack of a reasonable basis for denying payment.

## V. CONCLUSION

¶ 62. We conclude that § 102.23(5) unambiguously requires an employer to make payment to a disabled employee pending appeal of a date of injury defense in an occupational disease case when the employer's liability is not disputed on appeal and the only question is who will pay benefits. Therefore, we hold that Shelby's interpretation of § 102.23(5) is not reasonable or fairly debatable as a matter of law because Shelby's original appeal did not contest A.T. Polishing's liability and involved only the question of whether Shelby was liable to pay benefits. Further, because § 102.18(1)(bp) specifically allows for the imposition of bad faith penalties on an employer for failure to pay benefits and because § 102.23(5) specifically directs the employer to pay benefits pending an appeal when the only issue is who will pay benefits, we hold that an employer may be subject to bad faith penalties under § 102.18(1)(bp), independent from its insurer, when it fails to pay benefits in accordance with § 102.23(5).

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 63. DIANE S. SYKES, J., did not participate.