REBECCA GRASSL BRADLEY, J. (concurring).
¶ 45 I join the majority opinion but write separately to respond to the dissents. One dissent accuses the majority of having "manufactured" a right for the employee members of the Employee Retirement System of Milwaukee because the statutes do not define what "other rights" the Wisconsin legislature prohibits the City from modifying. Justice Kelly's dissent, ¶ 103. But when the legislature does not define a term, it is up to the judiciary to identify and declare its meaning, something neither dissent attempts. Another dissent says the majority's recognition of employee voting rights "borders on the absurd." Justice Abrahamson's dissent, ¶ 55. However, the logical extension of the dissents' position would be to allow the City to disband the Employee Retirement System (ERS) Annuity and Pension Board (Board) altogether, thereby eliminating the entire administrative structure of the ERS.[1]
*607 ¶ 46 The legislature "vested" "[t]he general administration and responsibility for the proper operation of the retirement system ... in an annuity and pension board." § 7(1), ch. 396, Laws of 1937. The legislature also "vested" in the Board the responsibility "for making effective the provisions of this act." Id. Accepting the dissents' construction of these laws would render both provisions utterly ineffective: A retirement system would exist for the payment of benefits to employees but there would be no entity to administer or operate it. No entity would exist to "mak[e] effective the provisions" of the law.
¶ 47 "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. "A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 63 (2012). "This canon follows inevitably from the facts that (1) interpretation always depends on context, (2) context always includes evident purpose, and (3) evident purpose always includes effectiveness." Id."[W]e read the language of a specific statutory section in the context of the entire statute. Thus, we interpret a statute in light of its textually manifest scope, context, and purpose." Bosco v. LIRC, 2004 WI 77, ¶ 23, 272 Wis. 2d 586, 681 N.W.2d 157 (citing Kalal, 271 Wis. 2d 633, ¶¶ 6, 48 n.8, 681 N.W.2d 110 ).
¶ 48 In this case, we interpret the word "rights" in the context of the session laws, which gave the City "the largest measure of self-government with respect to" the ERS, including the right to amend and alter their provisions, except that the City is prohibited from modifying "annuities, benefits or other rights" of ERS members. Because the non-technical word "rights" is not defined in the session laws, we ascertain and apply its ordinary meaning. Town of Lafayette v. City of Chippewa Falls, 70 Wis. 2d 610, 619, 235 N.W.2d 435 (1975). A dictionary definition may guide our interpretation of a non-technical word the session laws do not define. Spiegelberg v. State, 2006 WI 75, ¶ 19, 291 Wis. 2d 601, 717 N.W.2d 641. "It has come to be well understood that there is no more ambiguous word in legal and juristic literature than the word 'right.' " Roscoe Pound, The Ideal Element in Law 110 (Stephen Presser ed., Liberty Fund 2002) (1958). Black's Law Dictionary includes among its definitions of "right" the following: "Something that is due to a person by just claim, legal guarantee, or moral principle" and "[a] power, privilege, or immunity secured to a person by law." Right, Black's Law Dictionary (10th ed. 2014). Under the 1937 law, Board membership "shall consist of the following:" three members appointed by the chairman of the common council, the city comptroller, and three members appointed by ERS members. § 7(2), ch. 396, Laws of 1937. In the context of the session laws we construe, the mandatory structure of the Board constitutes a statutory right-something due to city employees under the law. One dissent concludes that after the 2013 Amendment, the employees still have three representatives on the Board, so there is no violation. Justice Kelly's dissent, ¶¶ 109-10. But this conclusion fails to give effect to the textual requirement *608 of membership consisting of seven members-no more and no less. Because the 2013 Amendment adds three members appointed by the mayor, it violated the session law's mandate.[2]
¶ 49 The dissents eschew the court's interpretation of "rights" under the session laws but both dissenters decline to interpret the word or give it any meaning whatsoever. "It is, of course, a solemn obligation of the judiciary to faithfully give effect to the laws enacted by the legislature, and to do so requires a determination of statutory meaning." Kalal, 271 Wis. 2d 633, ¶ 44, 681 N.W.2d 110 (emphasis added). In accordance with this judicial duty, the court applies an interpretation that furthers the purpose of the session laws-ensuring the security of retirement and death benefits-by preserving the legislature's mandate of a Board to administer and operate the ERS. The dissents' interpretation would obstruct this express legislative purpose by allowing the elimination of the Board, leaving the ERS without any entity to administer or operate it. "An interpretation that contravenes the manifest purpose" of a law "is unreasonable." State v. Dinkins, 2012 WI 24, ¶ 29, 339 Wis. 2d 78, 810 N.W.2d 787.
¶ 50 The dissents maintain that the statutorily-prescribed Board composition is not a right of ERS members without any attempt to give meaning to this pivotal word. But "[w]ithout some indication to the contrary, general words ... are to be accorded their full and fair scope. They are not to be arbitrarily limited." Scalia & Garner, supra ¶3, at 101. The dissents apparently "think that when courts confront generally worded provisions, they should infer exceptions for situations that the drafters never contemplated and did not intend their general language to resolve." Id. But "[t]raditional principles of interpretation reject this distinction because the presumed point of using general words is to produce general coverage-not to leave room for courts to recognize ad hoc exceptions." Id. Our interpretive task is, of course, easier when the legislature uses specific or defined terms, but when the legislature speaks broadly using general terms, "they must be given general effect." Id.
¶ 51 While the state legislature precluded the City from changing the composition of the Board, the legislature itself retains this power.[3] The ERS, as well as the *609 Board, are statutory creations. Accordingly, they remain within the authority of the legislature to alter. And while the state legislature delegated a broad measure of self-governance to the City with respect to the ERS, the people's elected representatives exempted from that transfer of authority any changes to city employees' benefits, annuities, and other rights. What the legislature gives, it may take away-excluding any vested benefits. Stoker v. Milwaukee Cty., 2014 WI 130, ¶ 24, 359 Wis. 2d 347, 857 N.W.2d 102 ("[A] right that is unvested, by definition, can be taken away.").
¶ 52 One dissent accuses the court of "roam[ing] the state looking for good ideas to enact" and legislating instead of adjudicating. Justice Kelly's dissent, ¶¶ 103, 115. Whether a smaller Board is a better idea than a larger Board is irrelevant to me. Discerning the meaning of a law is the essence of the judicial function. It requires the application of canons of interpretation, which serve as "guides to solving the puzzle of textual meaning, and as in any good mystery, different clues often point in different directions." Scalia & Garner, supra ¶3, at 59. While the principles of statutory interpretation are stable, it is not "always clear what results the principles produce." Id. at 61. Reaching a different result does not equate to legislating. Judges "may arrive at differing reasonable readings because the legislature used imprecise terms." Daniel R. Suhr, Interpreting Wisconsin Statutes, 100 Marq. L. Rev. 969, 985 (citing Landis v. Physicians Ins. Co. of Wis., 2001 WI 86, ¶ 26, 245 Wis. 2d 1, 628 N.W.2d 893 ).[4] Statutory "provisions are neither to be restricted into insignificance, nor extended to objects not comprehended in them." Ogden v. Saunders, 25 U.S. (12 Wheat.) 213, 332, 6 L.Ed. 606 (1827). The dissents' interpretation would render insignificant, if not altogether eliminate, the word "rights" from the text of the session laws. I reject such a " 'viperine' construction that kills the text." Scalia & Garner, supra ¶3, at 40. I therefore join the court in upholding the statutory right of City employees to the legislatively-mandated[5] composition of the ERS Board.[6]
*610 ¶ 53 I am authorized to state that Justice MICHAEL J. GABLEMAN joins this concurrence.

Justice Kelly's dissent criticizes my opinion for being "short-to the point of nonexistence-on sources of law for its conclusion." Justice Kelly's dissent, ¶ 119. We both analyze the Session Laws, although we reach differing interpretations. I rely on nine cases and four secondary sources, including Black's Law Dictionary and Justice Antonin Scalia's renowned treatise on textual interpretation, to support my eight-page opinion. Justice Kelly cites two cases in his sixteen-page opinion, and no precedent or authorities whatsoever in the seven pages he devotes to attacking my concurrence.